**BISON PARK DEVELOPMENT, LLC, Appellant–Respondent,**

v.

**NORTH AMERICAN SAVINGS BANK, F.S.B., Respondent–Appellant.**

**Nos. WD 75150, WD 75192.**

Missouri Court of Appeals, Western District.

May 28, 2013.

Robert J. Bjerg, Overland Park, KS, for appellant-respondent.

Thomas M. Franklin, Kansas City, MO, for respondent-appellant.

Before Division Three: JOSEPH M. ELLIS, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Bison Park Development, LLC ("Bison Park") appeals from the trial court's entry of judgment dismissing Bison Park's petition following the grant of a motion for directed verdict in favor North American Savings Bank, F.S.B. ("NASB"). Bison Park claims that the trial court erred in concluding that the Missouri Credit Agreement Statute, section 432.047,[1] barred its

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

causes of action against NASB. Finding no error, we affirm.

## Factual and Procedural Background [2]

Bison Park is a Missouri limited liability company owned by Troy Ruf ("Ruf") and Ruf's father. Bison Park is in the business of residential real estate ownership and development. Ruf owns 100 percent of Alexander Construction, Inc. ("Alexander Construction"), a corporation that is in the business of constructing and remodeling homes. Alexander Construction acts as the construction arm for Bison Park.

Bison Park owned two parcels of real estate: the Bison Park subdivision and Whispering Cove. Bison Park owned the Whispering Cove property free and clear of any debt or liens. Bison Park obtained a $1.5 million loan from NASB to develop the Bison Park subdivision into ninety single-family lots. Bison Park executed a $1.5 million promissory note with a term of one year and a deed of trust on the Bison Park subdivision in favor of NASB.

Sometime thereafter, Ruf contacted Drake Vidrine ("Vidrine"), a loan officer at NASB, about securing a loan for Alexander Construction to permit the purchase of land and the construction of four duplexes. NASB agreed to extend a loan to Alexander Construction in exchange for certain collateral security documents. Those documents included four promissory notes and four deeds of trust (one for each lot and corresponding duplex), and a fifth deed of trust on the Whispering Cove property owned by Bison Park. The deed of trust on the Whispering Cove property secured the loan to Alexander Construc-

tion and all other loans extended to Bison Park, including the outstanding $1.5 million development loan which was about to come due.

At the time the Whispering Cove deed of trust was signed, the Whispering Cove property was under contract to be sold. According to Ruf, Vidrine told him that upon the closing of the sale of Whispering Cove, NASB would release the deed of trust, and permit Bison Park to deposit the proceeds from the sale into an unpledged deposit account at NASB. It was Ruf's understanding that once the sale proceeds were placed in the unpledged deposit account, he would have unrestricted access to the funds.

While the sale of the Whispering Cove property remained pending, the $1.5 million development loan to Bison Park matured. NASB agreed to extend the development loan for six months. When the extension expired, Bison Park did not have the funds to repay NASB. NASB informed Bison Park that it would not release the Whispering Cove deed of trust unless proceeds from the sale were applied to pay down the defaulted Bison Park development loan. Thereafter, when the sale of Whispering Cove closed, NASB released its deed of trust on the property in exchange for $625,355.28 of the sale proceeds. NASB applied $600,000 to the defaulted principal balance due on the Bison Park development loan. NASB applied approximately $21,000 to the interest owed on the Bison Park development loan and applied approximately $3,900 to interest owed by Alexander Construction on its loan. Ultimately, Bison Park could not

---

**2.** In reviewing the trial court's judgment granting a motion for directed verdict, we review " 'all the evidence in the light most favorable to the plaintiff, giving him or her the benefit of all reasonable inferences, and disregarding the defendant's evidence except to the extent that it aids the plaintiff's case.' " *Gamber v. Mo. Dep't of Health & Senior Servs.*, 225 S.W.3d 470, 474 (quoting *Dunn v. Enter. Rent–A–Car Co.*, 170 S.W.3d 1, 3 (Mo.App. E.D.2005)).

repay the balance of the $1.5 million development loan. NASB foreclosed the unsold lots in the Bison Park subdivision.

Bison Park filed a petition against NASB, asserting four causes of action: (1) fraud, (2) negligent misrepresentation, (3), breach of contract, and (4) promissory estoppel. The essence of Bison Park's complaint was that NASB breached a promise to deposit the proceeds from the sale of Whispering Cove into an unpledged deposit account available for Bison Park's use. In its answer, NASB asserted that Bison Park's "causes of action ... are governed by the Whispering Cove Deed of Trust and other credit agreements, such that these claims are barred by the Credit Agreement Statute, [section] 432.047, RSMo."

The trial court held a two-day jury trial. At the close of Bison Park's case in chief, NASB filed a motion for a directed verdict on all counts. NASB argued that section 432.047 barred Bison Park's claims because those causes of action concerned matters outside of the written credit agreement between Bison Park and NASB. The trial court granted NASB's motion for a directed verdict. The trial court found that the credit agreement at issue "consisted of four simultaneously signed promissory notes and five deeds of trust," referring to the four promissory notes and five deeds of trust executed in connection with the loan to Alexander Construction. The trial court concluded that Bison Park's causes of action each relied on oral statements and promises made outside of the "written credit agreement" and were thus barred by section 432.047. Following its order granting NASB's motion for a directed verdict, the trial court entered a judgment that dismissed Bison Park's petition with prejudice.

Bison Park appeals.[3]

## Standard of Review

In reviewing the trial court's judgment granting a motion for a directed verdict, we must determine whether the plaintiff made a submissible case for every fact essential to liability. *Gamber,* 225 S.W.3d at 474. Whether the plaintiff made a submissible case is a question of law we review *de novo. Moore v. Ford Motor Co.,* 332 S.W.3d 749, 756 (Mo. banc 2011). We review " 'all the evidence in the light most favorable to the plaintiff, giving him or her the benefit of all reasonable inferences, and disregarding the defendant's evidence except to the extent that it aids the plaintiff's case.' " *Gamber,* 225 S.W.3d at 474 (quoting *Dunn v. Enter. Rent–A–Car Co.,* 170 S.W.3d 1, 3 (Mo.App. E.D.2005)).

## Analysis

Bison Park presents two arguments on appeal in its single point relied on, both of which claim that the trial court erred in granting NASB's motion for a directed verdict because section 432.047 does not bar Bison Park's causes of action.[4] First, Bison Park argues that, if section 432.047 applies, the trial court erred in granting NASB's motion for a directed verdict because Bison Park did not attempt to vary

---

3. NASB cross-appeals from the trial court's judgment, but we do not reach NASB's points on appeal because Bison Park's point relied on is dispositive.

4. Bison Park also argued in its brief that the trial court erred in granting NASB's motion for a directed verdict because NASB failed to assert section 432.047 as an affirmative defense in its answer; thus, according to Bison Park, NASB waived any argument that Bison Park's causes of action were barred. In its reply brief, Bison Park abandoned this argument and acknowledged the argument was without merit because, in its respondent's brief, NASB quoted the language of its answer that asserted section 432.047 as an affirmative defense.

or alter the terms of a written credit agreement. Instead, Bison Park claims, NASB's promise to release the Whispering Cove deed of trust in exchange for deposit of sale proceeds into an unpledged account was in accordance with the "written terms" of the parties' agreement. Second, Bison Park claims that the trial court erred in applying section 432.047 to bar its causes of action because NASB's promise to deposit the proceeds from the sale of the Whispering Cove property into a non-pledged account was not a credit agreement as defined by section 432.047.

Section 432.047.2 precludes a debtor from "maintain[ing] an action upon or a defense, regardless of legal theory in which it is based, in any way related to a credit agreement unless the credit agreement is in writing, provides for payment of interest or for other consideration, and sets forth the relevant terms and conditions." The statute defines "credit agreement" as "an agreement to lend or forbear repayment of money, to otherwise extend credit, or to make any other financial accommodation." Section 432.047.1.

*Bison Park seeks to vary or alter the terms of the written credit agreement found by the trial court*

First, Bison Park argues that the trial court mistakenly treated its effort to enforce NASB's promise to place all proceeds from the sale of Whispering Cove into an unpledged checking account as an attempt to vary the terms of a written credit agreement. Bison Park argues that the Whispering Cove deed of trust expressly envisioned the promise it now seeks to enforce. Bison Park alternatively argues that the Whispering Cove deed of trust, coupled with other written communications between the parties, form the relevant "written credit agreement" such that the promise about the deposit of the sale proceeds is in writing and enforceable.

■ As to the first of these alternative arguments, Bison Park claims that NASB assured Ruf at the time the Whispering Cove deed of trust was signed that Bison Park would have unfettered access to the proceeds of the sale of Whispering Cove. Bison Park does not argue that this "promise" is reflected in the Whispering Cove deed of trust or in any of other document signed at the time the Alexander Construction loan was extended.[5] Rather, Bison Park urges that paragraph 22 of the Whispering Cove deed of trust encompasses the promise made, permitting its enforcement. According to Bison Park's brief,[6] paragraph 22 of the Whispering Cove deed of trust provides:

> Grantor [Bison Park] acknowledges and agrees that upon the sale of the property described in this Deed of Trust, Lender [NASB] shall not be required to release this Deed of Trust or record *unless and until Lender [NASB] receives proceeds of the sale to be applied to the obligations owed by Bison Development Company, L.L.C. or Alexander Construction, Inc. in Lender's sole discretion.*

(Emphasis added.) Functionally, what occurred upon the sale of the Whispering Cove property was precisely as expressed in the Whispering Cove deed of trust. The proceeds were applied at NASB's discretion to the obligations owed by Bison

---

5. The trial court's judgment found the "credit agreement" to be the four promissory notes and the five deeds of trust executed at the time of the loan to Alexander Construction. Bison Park does not challenge this finding on appeal.

6. As we discuss in greater detail *infra,* the Whispering Cove deed of trust has not been made a part of the record on appeal and is not available for our review or consideration.

Park and Alexander Construction. It is true that the application of the proceeds was subject to NASB's discretion. Thus, NASB could have exercised its discretion to release the proceeds to Bison Park free of debt or lien. However, paragraph 22 did not legally bind NASB to do so. Bison Park's argument that NASB made a binding oral "election" long before the Whispering Cove closing to release the sale proceeds to Bison Park free and clear of obligations it owed NASB is at variance with the plain language of paragraph 22 of the deed of trust. Bison Park's causes of action each required a determination that NASB was legally bound to treat the proceeds of the sale of Whispering Cove in a manner not required by the deed of trust. As such, section 432.047.2 operates to bar Bison Park's claims. *See BancorpSouth Bank v. Paramont Props.*, 349 S.W.3d 363, 368 (Mo.App. E.D.2011) (holding that section 432.047.2 effectively eliminates "all claims based upon oral credit agreements").

■ Bison Park alternatively argues that written communications exchanged between the parties both before and after the Whispering Cove deed of trust was signed confirm NASB's oral assurance at the time the deed of trust was executed, and thus serve, along with the Whispering Cove deed of trust, to form the written credit agreement Bison Park is seeking to enforce. There are several problems with this argument. First, the argument is in direct conflict with the trial court's conclusion that the credit agreement at issue was the four promissory notes and the five deeds of trust executed at the time of the Alexander Construction loan. Bison Park does not challenge this finding. Second, even if we afford Bison Park the benefit of its assertion that the actual credit agreement at issue is the Whispering Cove deed of trust coupled with other written communications between the parties, Bison Park has not provided us with the exhibits admitted at trial relevant to its contention. The Whispering Cove deed of trust and the writings Bison Park claims confirm NASB's promise to release the deed of trust and deposit the money in an unpledged deposit account are not a part of our record on appeal.[7] Rule 81.16 provides that "[i]f original exhibits are necessary to the determination of any point relied on, they shall be deposited in the appellate court" no later than the date the reply brief is due. The failure to include exhibits in the record "results in the assumption that the [documents] are immaterial to the appeal." *Howard v. Turnbull*, 316 S.W.3d 431, 434 n. 3 (Mo.App. W.D. 2010) (citing Rule 81.16(c)). The Whispering Cove deed of trust and the subsequent writings evidencing NASB's promise to release the Whispering Cove deed of trust are essential to Bison Park's claim. Without those exhibits, we cannot definitively conclude that Bison Park's causes of action were allowed by section 432.047 such that the trial court's entry of a directed verdict in favor of NASB was error. *See Dawson v. Dawson*, 366 S.W.3d 107, 113 (Mo.App. W.D.2012) (holding that because the appellant did not submit an exhibit necessary for the determination of her point relied on, the court could not definitively conclude that the trial court committed error).

---

**7.** Bison Park included copies of documents it purports to be the Whispering Cove deed of trust and the writings that confirmed NASB's promise in the appendix attached to its brief. The appendix is not part of the legal file or otherwise part of the record on appeal. *See In re T.C.T.*, 165 S.W.3d 529, 531 n. 2 (Mo. App. W.D.2005). Thus, we are not permitted to consider those documents in our review of Bison Park's appeal. The documents included in Bison Park's appendix do not bear trial exhibit stickers, and we have no way to confirm that the documents are, in fact, identical to what was admitted at trial.

Finally, although the referenced written communications may well have reflected NASB's initial willingness to deposit the Whispering Cove proceeds into an unpledged account, Bison Park does not argue that NASB was thereafter prohibited from exercising its contractually permissible discretion differently when its deed of release was actually required. In light of the fact that by the time the Whispering Cove property closed, Bison Park's $1.5 million development loan had gone into default, NASB's "change of heart" is neither surprising nor inconsistent with its rights as set forth in paragraph 22 of the Whispering Cove deed of trust.

*NASB's promise falls within the definition of credit agreement*

██ In the second argument raised by its single point relied on, Bison Park claims that NASB's oral promise that Bison Park would receive the proceeds from the sale of Whispering Cove free and clear of debt does not meet the statutory definition of a "credit agreement." The argument plainly misapprehends the "promise" made by NASB.

Bison Park acknowledges that section 432.047.1 defines "credit agreement" as "an agreement to lend or forbear repayment of money, to otherwise extend credit, or to make any other financial accommodation." Here, the promise by NASB involved an agreement to refrain from applying sale proceeds to outstanding indebtedness owed by Alexander Construction or Bison Park as permitted by paragraph 22 of the Whispering Cove deed of

trust. In other words, the promise involved an agreement to forbear repayment of money. The promise also involved an agreement to afford financial accommodation to Bison Park by permitting it retain the proceeds of property serving as collateral for debt owed (and past due). We do not accept Bison Park's strained attempt to distance the promise it seeks to enforce from the plain meaning of "credit agreement" set forth in section 432.047.

Point denied.[8]

### NASB's Cross–Appeal

Because we affirm the trial court's judgment dismissing Bison Park's petition following the trial court's grant of NASB's motion for directed verdict, we need not reach the points raised by NASB's cross-appeal. The cross-appeal is therefore dismissed as moot.

### Conclusion

The trial court's judgment is affirmed.

All concur.

8. During oral argument, Bison Point raised a new claim of error it acknowledges it did not raise in its brief. Bison Park claims the Whispering Cove deed of trust failed to include "warning" language required by section 432.047.3 in ten-point font. Facially, this newly raised argument is without merit as it presumes the credit agreement was just the Whispering Cove deed of trust, and not, as the trial court found, the four promissory notes and five deeds of trust executed when the Alexander Construction loan closed. More to the point, the new argument is not preserved for appellate review. *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, n. 20 (Mo.App. W.D. 2012) ("We cannot consider issues raised for the first time during oral argument....").