

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| KANSAS CITY LIVE BLOCK<br>125 RETAIL, LLC, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | WD78184 |
| | ) | |
| HAMENDRA BHAKTA AND<br>DANIEL BHAKTA, | ) | Opinion filed:  December 8, 2015 |
| | ) | |
| Appellants. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### THE HONORABLE CHARLES H. MCKENZIE, JUDGE

Before Division One:  Anthony R. Gabbert, Presiding Judge,
Victor C. Howard, Judge and Cynthia L. Martin, Judge

Hamendra Bhakta and Daniel Bhakta appeal the judgment of the trial court in favor of Kansas City Live Block 125 Retail, LLC (KC Live), in its action against the Bhaktas for breach of a guaranty agreement.  The Bhaktas contend that the trial court erred in entering judgment in favor of KC Live because KC Live failed to present sufficient evidence that (1) consideration supported the guaranty and (2) the conditions precedent to enforceability of the guaranty were satisfied.  The judgment of the trial court is affirmed.

**Factual and Procedural History**

On September 29, 2008, KC Live, as landlord, and Albert Group, LLC, as tenant, entered into a commercial lease agreement. The lease granted Albert Group the authority to operate a Genghis Grill restaurant in a space in the Kansas City downtown Power & Light District. The lease provided for rent of $8,019 monthly (or $96,228 annually) and other charges. The lease also defined the parameters of an assignment or transfer of ownership, in pertinent part:

> 2301. Without prior written consent of Landlord…Tenant shall not assign…or permit the Premises or any part thereof to be used by others, or otherwise transfer…this Lease or the Premises or any interest herein or therein. Neither the Premises, nor any part thereof, will be used, occupied or managed, or permitted to be used, occupied or managed, by anyone other than Tenant…. A sale, transfer, assignment, conveyance, endorsement or other disposition of…a managing member's interest, if Tenant is a limited liability company or…fifty percent (50%) or more (in the aggregate on accumulative basis)…of the interest in capital, profits, or losses of Tenant (if Tenant is a…limited liability company…) shall be deemed to be an assignment of this Lease within the meanings of Section 2301…. Any other transaction that results in a change of operational control of Tenant…shall also be deemed to be an assignment of this Lease within the meaning of this Section 2301….

The lease further provided that if KC Live consented to transfer of ownership, all parties must execute an agreement:

> 2307. Should Landlord consent to a Transfer, Tenant, its proposed Transferee and Landlord shall execute an agreement, prepared by or acceptable to Landlord in its sole reasonable discretion, under which the proposed Transferee shall be bound by the terms and conditions of this Lease…

At the time the lease was executed, the president of Albert Group, Dan Albert, along with his wife, Katrina Albert, and JoAnne Sanchez signed a personal guaranty agreeing to guarantee and be responsible for all payments due from Albert Group under the lease.

Thereafter, as Albert Group got into the construction process and closer to opening the restaurant, it began having issues with financing and its contractors. KC Live became concerned about Albert Group's financial stability and wanted Albert Group to obtain $120,000 in

2

additional funding to ensure sufficient funds to pay contractors and avoid the potential of liens being filed against the property. In late December 2008 or early January 2009, Albert Group began discussions with Hamendra Bhakta and Daniel Bhakta, who are brothers, regarding a Ghenghis Grill investment opportunity. Albert Group and the Bhaktas discussed the Bhaktas investment of $120,000 for a 30% interest in Albert Group. After learning that the Bhaktas would be providing funding and getting an ownership interest in Albert Group, KC Live requested the Bhaktas to guarantee the lease. The Bhaktas made an initial $60,000 payment to Albert Group in January 2009 and a second $60,000 payment at the time they signed the guaranty on March 11, 2009. The Guaranty provided, in pertinent part:

> In order to induce Kansas City Live Block 125 Retail, LLC ("Landlord") to consent to a transfer to the undersigned of an interest in Tenant under that certain Lease (the "Lease") dated September 29, 2008, between Landlord and Albert Group, LLC ("Tenant") for the Premises…and in consideration thereof and other good and valuable consideration, the receipt of adequacy of which is hereby acknowledged, the undersigned ("Guarantor") hereby unconditionally, absolutely and irrevocably guarantees to Landlord…the prompt and full payment (and not merely the collectability) and performance and observance by Tenant of each and every item, covenant, condition, provision and obligation to be paid, kept, observed or performed by Tenant under the Lease, together with any and all costs and expenses, including reasonable attorneys' fees, which may be incurred by Landlord in connection with any default by Tenant under the Lease or enforcing the Lease and/or this Guaranty (collectively the "Obligations").

When the Guaranty was signed, the Bhaktas understood that the funds they were providing to Albert Group were needed to pay a down payment to a contractor to allow construction to begin. Moreover, KC Live did not have any information regarding what percentage of ownership interest Albert Group planned to transfer to the Bhaktas. No transfer of ownership had been initiated at the time the Bhaktas made payments to Albert Group, but the Bhaktas intended to get their ownership interest at some time in the future.

The Bhaktas never acquired an ownership interest in Albert Group. In April 2009, they learned of restrictions regarding a change of ownership in Albert Group's Small Business Administration (SBA) loan. The Genghis Grill opened in late June 2009. It went out of business in October 2011.

KC Live filed the underlying action for breach of guaranty against the Bhaktas in June 2010. It contended that the Bhaktas executed a personal guaranty for the lease between it and Albert Group, that Albert Group defaulted on the lease, and that the Bhaktas were liable for unpaid rent and other charges, which totaled over $1 million at the time of trial in August 2014.

Following a bench trial, the trial court entered judgment in favor of KC Live and against the Bhaktas in the amount of $1,166,367.30 plus attorney's fees and costs finding that as guarantors, the Bhaktas were liable for the amount due under the lease. This appeal by the Bhaktas followed.

**Standard of Review**

In their two points on appeal, the Bhaktas contend that the trial court erred in entering judgment in favor of KC Live because KC Live failed to present sufficient evidence that (1) consideration supported the guaranty and (2) the conditions precedent to enforceability of the guaranty were satisfied. In reviewing a court-tried case, the appellate court will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014)(citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). To be successful on their claim of insufficient evidence, the Bhaktas are required to demonstrate that the judgment was not supported by substantial evidence. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 629 (Mo. banc 2014). Substantial evidence is evidence that, if believed, has some probative force on

4

each fact necessary to sustain the trial court's judgment. *Ivie*, 439 S.W.3d at 199. "Evidence has probative force if it has any tendency to make a material fact more or less likely." *Id.*

In reviewing whether the trial court's judgment is supported by substantial evidence, the appellate court views the evidence in the light most favorable to the judgment and defers to the trial court's credibility determinations. *Id.* at 200. It accepts as true the evidence and inferences favorable to the judgment and disregards all contrary evidence. *Id.* The trial court is free to believe any, all, or none of the evidence presented at trial. *Id.* "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

## Discussion

A guaranty is a contract that must be supported by consideration. *Boatmen's First Nat'l Bank of Kansas City v. Roofco Sys., Inc.*, 852 S.W.2d 402, 403 (Mo. App. W.D. 1993); *Henty Constr. Co. v. Hall*, 783 S.W.2d 412, 418 (Mo. App. E.D. 1989). A guaranty executed contemporaneously with the original contract may be considered part of the original contract and supported by the same consideration. *Henty Constr.*, 783 S.W.2d at 419. If, however, a guaranty is executed subsequently to the principal contract, it requires a new and independent consideration. *Kurtz v. Fischer*, 600 S.W.2d 642, 646 (Mo. App. W.D. 1980).

"Consideration consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014)(internal quotes and citation omitted). Consideration for a guaranty need not move only between the creditor and guarantor. *Boatmen's First Nat'l Bank*, 852 S.W.2d at 403. Benefit to the debtor or detriment to the creditor constitutes sufficient consideration to support a guaranty. *Id.* at 403-4; *Henty Constr.*, 783 S.W.2d at 418. The

5

guarantor need not receive any benefit from either the principal contract or the guaranty. *Boatmen's First Nat'l Bank*, 852 S.W.2d at 404; *Henty Constr.*, 783 S.W.2d at 418. Moreover, a guarantor need not have an interest in the debtor for a guaranty to be enforceable. *Mercantile Trust Co. v. Carp*, 648 S.W.2d 920, 924 (Mo. App. E.D. 1983)("A guarantor's liability for a corporation's debt is not dependent upon the guarantor's interest in the corporation.").

The Guaranty in this case provided two sources of consideration for the Bhaktas' promise to guarantee the lease. First, it provided, in pertinent part,

> In order to induce [KC Live] ("Landlord") to consent to a transfer to the undersigned of an interest in [Albert Group] under that certain Lease…dated September 29, 2008, between Landlord and Albert Group…for the Premises…and in consideration thereof…the [Bhaktas] hereby unconditionally, absolutely and irrevocably guarantees to Landlord…the prompt and full payment…and performance and observance by [Albert Group] of each and every item, covenant, condition, provision and obligation to be paid, kept, observed or performed by Tenant under the Lease.

The lease required KC Live's consent for certain assignments or transfers of ownership, specifically, if Albert Group wanted to transfer a managing member's interest, fifty percent (50%) or more of its interest in capital, profits, or losses of Tenant, or operational control. The evidence showed that Albert Group and the Bhaktas initially discussed a transfer of a 30% interest, which may not have necessarily required KC Live's consent under the lease. The record was unclear, however, whether such transfer was of a managing member's interest or of operational control. Furthermore, the record showed that KC Live had no information regarding the terms of a possible ownership transfer between Albert Group and the Bhaktas when the Guaranty was signed. Nevertheless, KC Live promised to consent to a transfer of ownership interest without regard to the size of the transfer. The consent provision of the Guaranty provided a benefit to the Bhaktas, KC Live's consent to a transfer of an ownership interest in Albert Group to them. It also arguably provided a detriment to KC Live in that it no longer had

6

discretion to consent to a transfer of ownership of its tenant but was required to consent. The consent provision provided consideration for the Bhaktas' promise to guarantee the lease.

Second, the Guaranty contained the language that it is made "in consideration [of] other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged." The recitation in a guaranty "for value received" is prima facie evidence of sufficient consideration to support the guaranty. *Stewart Title Guar. Co. v. WKC Rests. Venture Co.*, 961 S.W.2d 874, 882 (Mo. App. W.D. 1998); *Gover v. Empire Bank*, 574 S.W.2d 464, 468 (Mo. App. 1978). Such recital of consideration creates a presumption that, though not conclusive, is sufficient to support the guaranty unless the presumption is overcome to the satisfaction of the trial court by acceptable and persuasive evidence to the contrary. *Gover*, 574 S.W.2d at 468. The recitation in the Guaranty in this case is equivalent to a recitation of "for value received." Thus, the Guaranty itself provided prima facie evidence of consideration.

The Bhaktas argue that the presumption of consideration was rebutted because KC Live never presented specific evidence of Albert Group's financial issues or that the contractors were threatening mechanic's liens and the lease did not contain any provisions imposing financing and construction requirements on Albert Group or allowing KC Live to shut down construction if certain requirements were not met. Rather, they assert, the evidence showed that Albert Group had financing and contractors lined up before approaching them with an investment opportunity and they and Albert Group did not receive anything in exchange for the guaranty that they weren't already entitled to, namely the right to continue with schedule restaurant renovations.

The Bhaktas' argument overlooks the standard of review. In this court-tried case, the trial court was the arbiter of the facts and was free to believe or disbelieve any of the evidence. Furthermore, this court must view the evidence in the light most favorable to the judgment. That

7

evidence showed that KC Live became concerned about Albert Group's financial stability as it got into the construction process and wanted Albert Group to obtain $120,000 in additional funding to ensure sufficient funds to pay contractors and avoid the potential of liens being filed against the property. As a result, Albert Group approached the Bhaktas about a Ghenghis Grill investment opportunity. The evidence also showed that the Bhaktas understood that the funds were needed to pay a down payment to a contractor to allow construction to begin. Substantial evidence was presented that the consideration that was acknowledged but not expressly described in the Guaranty was Albert Group receiving $120,000 in funding from the Bhaktas. Such funding was a benefit to Albert Group and constituted sufficient consideration to support the Guaranty. The first point is denied.

Next, the Bhaktas argue that insufficient evidence was presented that two conditions precedent to the enforceability of their personal guaranty were satisfied. Specifically, they contend that KC Live failed to present any evidence that it provided them and Albert Group consent to an ownership transfer or that they obtained an ownership interest in Albert Group and that, as a result, their guaranty of the lease was not enforceable.

"[A] condition precedent is an act or event that must be performed or occur, after the contract has been formed, before the contract becomes effective." *Morgan v. City of Rolla*, 947 S.W.2d 837, 840 (Mo. App. S.D. 1997)(internal quotes and citation omitted). *See also Gillis v. New Horizon Dev. Co.*, 664 S.W.2d 578, 580 (Mo. App. W.D. 1983)("A party suing for breach of a contract must allege and prove performance of all conditions precedent, or he must allege and prove an excuse for their nonperformance." (internal quotes and citation omitted)). "Conditions precedent are usually created by such phrases as 'on condition,' 'provided that,' 'so that,' and the like, although such expressions are not necessary if the contract is of such a nature

8

as to show that parties intended to provide for a condition precedent." *Vantage Credit Union v. Chisholm*, 447 S.W.3d 740, 746 (Mo. App. E.D. 2014)(quoting *Globe Am. Corp. v. Miller Hatcheries, Inc.*, 110 S.W.2d 393, 396 (Mo. App. 1937)). "Conditions precedent are disfavored and contract provisions are construed as such only if unambiguous language so requires or they arise by necessary implication." *Morgan*, 947 S.W.2d at 840.

The Bhaktas contend that their personal guaranty did not become enforceable until KC Live consented to a transfer of ownership between them and Albert Group and they obtained an ownership interest in Albert Group. The plain language of the guaranty revealed that it was a contract of bilateral terms involving mutual promises for mutual performances. KC Live promised to consent to an ownership transfer between Albert Group and the Bhaktas. The Bhaktas made the concurrent promise to unconditionally guarantee the lease between KC Live and Albert Group. The language of the guaranty belies the Bhaktas' assertion that KC Live's actual consent to an ownership transfer was a condition of their guaranteeing the lease. The Guaranty lacked any language conditioning the Bhaktas' guaranteeing the lease on KC Live's consent to ownership transfer. It did not provide that the Bhaktas will guarantee the lease "on condition that" or "provided that" KC Live actually consents to an ownership transfer but instead unequivocally provided that the Bhaktas "unconditionally, absolutely and irrevocably guarantees" the lease. And nowhere in the guaranty is there any language that purported to require an actual ownership transfer as a condition of guaranteeing the lease. If the parties intended the Bhaktas' guaranty be conditional on KC Live's consent to a transfer of ownership or the actual transfer of an ownership interest to the Bhaktas, they could have explicitly so provided. Neither the unambiguous language nor nature of the Guaranty made consent to or

9

actual transfer of ownership a condition precedent of the Bhaktas' guaranty of the lease.  The Bhaktas' guaranty of the lease was enforceable.  The point is denied.

The judgment of the trial court is affirmed.



_____
VICTOR C. HOWARD, JUDGE

All concur.

10