

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| CURRY INVESTMENT COMPANY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | **WD78899** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| | ) | **June 28, 2016** |
| JAMES B. SANTILLI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Robert L. Trout, Judge**

**Before Division Two:** Victor C. Howard, Presiding Judge, and
Thomas H. Newton and Karen King Mitchell, Judges

Curry Investment Company appeals from the trial court's judgment in favor of the Defendant James B. Santilli on Curry's breach of contract action. Curry argues that the trial court erred in: (1) allowing Santilli to testify and present evidence on issues that had been deemed admitted due to Santilli's failure to respond to Curry's requests for admissions; and (2) determining that doors Santilli installed on Curry's property were business fixtures. We affirm the trial court's judgment.

## Background[1]

Curry and Santilli entered into a commercial lease agreement, wherein Santilli's business, which produced custom furniture and medical beds, leased part of a building that Curry owned. Under the terms of the lease agreement, physical improvements to the rented space were subject to the following clause:

> Except for [Santilli's] property and business fixtures, all buildings, repairs, alterations, additions, improvements, installations, and other non-business fixtures installed or erected on the premises, whether by or at the expense of [Curry] or [Santilli], will belong to [Curry] and will remain on and be surrendered with the premises at the expiration or termination of this lease.

Santilli installed fourteen doors in the leased space. Upon termination of the lease, Santilli removed the doors from the building. Curry subsequently filed suit, alleging that the doors were non-business fixtures, and that, under the lease agreement, the doors remained Curry's property.

During the litigation, Curry propounded discovery, including requests for admissions under Rule 59.01.[2] The requests included the following:

> 5. ADMIT that you removed 14 doors from the premises; [and]
>
> 6. ADMIT that each door you removed from the [p]remises were improvements, installations, and non-business fixtures.

Santilli did not respond to Curry's requests for admissions.

On the morning of trial, before the presentation of evidence, Curry requested that certain unidentified issues be deemed admitted because of Santilli's failure to respond to the requests for admissions. Curry's counsel told the trial court:

> [T]here is a discovery issue here. We served interrogatories, request for admissions, as well as a request for production of documents to Mr. Santilli on or about May 4th of this year. Mr. Santilli halfway answered the interrogatories, but he failed to respond to the request for production of documents, as well as for a

---

[1] "On appeal from a court-tried case, we review the facts in the light most favorable to the judgment." *Golden Rule Ins. Co. v. R.S.*, 368 S.W.3d 327, 330 n.1 (Mo. App. W.D. 2012).

[2] All rule references are to the Missouri Supreme Court Rules (2016).

request for admissions under Rule 59.01. Additionally, he also did not file any type of a certificate with the Court saying that he fully and completely answered our discovery request. We have filed a certificate saying that we have propounded them to Mr. Santilli under 59.01. *If you do not basically answer the admission, they are deemed admitted. And we're going to ask the Court to basically rule as such. At the least, take judicial notice of that before we proceed.*

(Emphasis added.) The trial court responded that, "we'll take your motion with the case . . . since we're here today trying the case." Curry's counsel responded, "No, problem." And the parties proceeded to present evidence. There is nothing in the record that indicates that Curry ever filed the requests for admissions with the court prior to the day of trial, or that it offered a copy of the requests to the court during the pre-trial discussions.

In its case-in-chief, Curry offered the testimony of its senior vice president, Mike Sweeney, who testified to the terms of the lease, the nature of the doors at issue, and that the removal of the doors caused damage to the building. Curry did not present testimony regarding the requests for admissions or offer them to the court as an exhibit.[3]

In response, Santilli offered testimony on the issue of whether the doors were business fixtures.

MR. SANTILLI:

There are no disputes in the fact [sic] in this case, Your Honor. We moved into a building that had open rooms, no doors. We had a business that produced furniture, custom built furniture, and we produced medical beds.

In our old location we had partitioned doors between the rooms so that we would have clean working areas and we could control fumes, feathers, spraying, and keep storage of medical beds and everything separate from production of residential furniture.

When we moved into that space there were no doors whatsoever. There were walls separating the rooms. What we installed to solve our needs and our problem is what I refer to as a partition door. These were tools and equipment of the business purchased to be moved in that space as our production dictated, so

---

[3] Curry's counsel acknowledged at oral argument that the requests for admissions were first presented to the trial court as an attachment to Curry's post-trial motion for new trial or to amend the judgment.

3

that we could produce medical beds, furniture, and other things and close these rooms off.

We also moved these doors around. They did not stay fixed in one location. We might close one end of the building off. And at one point when we lost production of the medical beds we removed the jamb, moved the door.

At this point, Curry's counsel objected to Santilli's testimony:

MR. GUSEYNOV:

Your Honor, before Mr. Santilli kind of goes any further, I want to again point the Court's attention that we asked specific questions in our request for admissions; more specifically, No. 5 that says: Admit that you removed 14 doors from the premises, and No. 6 saying: Admit that each door you removed from the premises were improvement installations and non-business fixtures at the premises. Under the rules these are deemed admitted. And basically, under the rules, there should be no further dispute regarding these along with other stuff.

We asked Mr. Santilli in the interrogatories to basically give us his explanation as to each and every fact that he's going to be relying upon to deny any of his—deny any of our claims in the petition that he did not adequately answer. So under the rules, I will object to this and leave it to the Court's discretion as to how it wants to rule.

The court indicated that it would take the objection with the case and allowed Santilli to testify.[4]

Over Curry's objection, Santilli testified that he did not install the doors with the intent that they become permanent fixtures, and that the building was not damaged when they were removed.

Neither party asked for findings of fact or conclusions of law. Following trial, the court entered judgment in favor of Santilli, finding simply that the doors were business fixtures and that, pursuant to the lease, he had the right to remove them. Curry filed a motion for new trial, or in the alternative, for an amended judgment, based on the effect of Santilli's failure to respond to

---

[4] Apparently in response to Curry's objection, Santilli offered a copy of an email he claimed to have sent to Curry's counsel several months before the requests for admissions were propounded, in which Santilli explained his belief that the doors were a business fixture. Curry objected to the email on the grounds that it had not been provided to Curry in response to its request for production of documents. But, the court ultimately received the email into evidence, based on the fact that it was addressed to Curry's counsel and it appeared that they had received it.

4

Curry's requests for admissions. In response, the trial court entered an "Amended Order Overruling Plaintiff's Motion for New Trial," finding that Santilli's email to Curry's counsel functioned as a response to Curry's requests. Curry timely appeals.

## Standard of Review

In a court-tried case, "we affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, it misstates the law, or it misapplies the law." *Golden Rule Ins. Co. v. R.S.*, 368 S.W.3d 327, 334 (Mo. App. W.D. 2012). "We view all of the evidence and the reasonable inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Bolt v. Giordano*, 310 S.W.3d 237, 242 (Mo. App. E.D. 2010). "When neither party requests the entry of findings of fact or conclusions of law, we assume the trial court resolved all issues of fact in accordance with the result reached." *Id.*; Rule 73.01(c).

## Analysis

Curry argues two points on appeal: (1) the trial court erred in allowing Santilli to testify, because Santilli's failure to respond to the requests for admissions meant that the requested admissions were conclusively established and Santilli should not have been allowed to provide contrary testimony; and (2) even if Santilli's testimony could be considered, the trial court misapplied the law in determining that the doors were removable business fixtures, as opposed to permanent fixtures. Because the issues are intertwined, we review the points together.

"After commencement of an action, a party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 56.01(b)." Rule 59.01(a). "Responses shall be served within 30 days after the service of the requests for admissions." Rule 59.01(d)(1). "A failure to timely respond

to requests for admissions in compliance with this Rule 59.01 shall result in each matter being admitted." Rule 59.01(a). Admissions under Rule 59.01 are treated like stipulations, judicial admissions, and admissions in a pleading. *Waters v. Meritas Health Corp.*, 478 S.W.3d 448, 458 n.5 (Mo. App. W.D. 2015). Any matters admitted are "conclusively established," Rule 59.01(b), and "not subject to dispute by the respondent at trial." *Dynamic Comput. Sols., Inc. v. Midwest Mktg. Ins. Agency, L.L.C.*, 91 S.W.3d 708, 718 (Mo. App. W.D. 2002). "[T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits." Rule 59.01(b).

There is no dispute that Curry served requests for admissions upon Santilli, or that Santilli's only "response" to the requests was the email that he sent near the time of the filing of the suit—before Curry propounded the requests for admissions. The trial court apparently considered Santilli's email to be a sufficient response to Curry's requests for admissions. This was error because settlement correspondence, which makes "no mention of the request[s] for admissions propounded by the [opposing party]," is not sufficient to satisfy Rule 59.01's requirements. *Dynamic Comput.*, 91 S.W.3d at 710-11, 717. Although the trial court's basis for its ruling was error, "[i]f the determination by the trial court is supported upon any reasonable theory by the law and the evidence, this court must affirm." *Almuttar v. Almuttar*, 479 S.W.3d 135, 138 (Mo. App. W.D. 2016) (quoting *Hicks v. Hicks*, 798 S.W.2d 524, 526 (Mo. App. S.D. 1990)). Further, issues must be properly preserved at trial and adequately raised on appeal.

In its first point relied on, Curry argues that the trial court abused its discretion in allowing Santilli to testify over objection regarding the character of the doors because Santilli's

6

failure to answer Curry's requests for admissions resulted in Santilli admitting that the doors were non-business fixtures that belonged to Curry. Thus, this fact was conclusively established, and Santilli should have been barred from testifying contrary to the admissions. The legal rationale for excluding evidence contradicting an admission is that a fact admitted in response to a request for admission is conclusively established, and thus, it is not subject to a credibility determination by the finder of fact. *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010) ("[W]hen a party 'has admitted . . . the basic facts of [the other party's] case[,]' . . . the issue is legal, and there is no finding of fact to which to defer.") (quoting *All Am. Painting, LLC v. Fin. Sols. & Assocs., Inc.*, 315 S.W.3d 719, 723 (Mo. banc 2010)); *Dynamic Comput.*, 91 S.W.3d at 718 (When a party "fail[s] to file a timely answer to the . . . request for admissions, . . . that matter [i]s conclusively established and [i]s not subject to dispute by the [party] at trial."). Therefore, if the admission is relied upon at trial by the party that propounded the request, the admission must be accepted as true, and the party that made the admission cannot seek to overcome it by presenting contradictory evidence. Here, then, where a party seeks to use an admission as a basis to exclude evidence at trial, the threshold question is whether the requests for admissions were properly before the trial court so that they could be relied upon as evidence in this case.

There is no question that requests for admissions "can be used in a motion for summary judgment, or in a motion to dismiss, or as evidence in the ensuing trial, and they must be considered by the court in deciding a motion for a directed verdict." *Lee v. Ofield*, 847 S.W.2d 99, 101 (Mo. App. W.D. 1992) (internal citations omitted). Because the file contains no record of any dispositive motions or a motion for directed verdict, it appears that Curry intended to use the admissions as evidence at trial. But there is nothing in the court file to indicate that the

requests for admissions were ever filed with the court before the day of trial. And in the pre-trial proceedings, Curry simply indicated that it had "filed a certificate saying that [Curry has] propounded [requests for admissions] to Mr. Santilli under [Rule] 59.01" and asked the court to either rule "they are deemed admitted . . . [or] take judicial notice of that before we proceed." Further, there is nothing in the record indicating that the requests for admissions were ever presented to the trial court during the presentation of evidence. At oral argument, Curry's counsel acknowledged that the requests for admissions were not filed with the court until after trial, when they were provided as an attachment to Curry's post-trial motion.

Because "[t]he effect of admissions made in response to a request [for admissions] is comparable to a legal admission made in the pleadings of a party, [] it is not necessary that they be formally introduced into evidence at the trial." *Research Hosp. v. Williams*, 651 S.W.2d 667, 670 (Mo. App. W.D. 1983) (Nugent, J., dissenting) (quoting *Williams v. Sch. Dist. of Springfield R-12*, 447 S.W.2d 256, 268 (Mo. 1969), *abrogated on other grounds by Bass v. Nooney Co.*, 646 S.W.2d 765, 768-69 (Mo. banc 1983)); *see also*, *TBF Fin. v. Stone*, 213 S.W.3d 231, 232-33 (Mo. App. S.D. 2007) (trial court erred in not considering requests for admissions that were presented to the court as an exhibit, although they were never admitted into evidence). While a request for admission need not be formally admitted into evidence to be relied upon at trial, we have found no case where the trial court was found to have committed error by not relying on requests that were neither filed with the court before trial nor presented to the court during the trial. In both *Research Hospital* and *TBF Financial*, the requests for admissions were presented to the court, although not formally admitted into evidence. *Research Hosp.*, 651 S.W.2d at 668 (trial court was advised of the admitted facts as part of motion for summary judgment); *TBF Fin.*, 213 S.W.3d at 232 (plaintiff offered as an exhibit the requests for admissions). Requiring

8

the requests for admissions to be before the court at the time of trial, if they are to be used as evidence at trial, makes perfect sense, because they are to be treated like stipulations, judicial admissions, and admissions in a pleading, *Waters*, 478 S.W.3d at 458 n.5, each of which would be part of the court's record.[5]

Curry offers no explanation as to how the trial court could have relied on these admissions for which it had only a certificate of service. Certainly, a "court may take judicial notice of its own records and files." *Batye v. State*, 599 S.W.2d 231, 234 (Mo. App. W.D. 1980). But again, there is no record that the requested admissions were in the court's file. "The trial court cannot be said to have abused its discretion in not taking judicial notice of" something that "was never presented to the trial court for its perusal." *Kansas City v. Dugan*, 524 S.W.2d 194, 197 (Mo. App. 1975). We think a similar rule should apply even if the court could rely on the admissions as evidence without taking judicial notice or judicially deeming the facts admitted.[6] Moreover, "the court of appeals cannot consider matters not preserved on the record and contained in an approved transcript." *Lee*, 847 S.W.2d at 100-01.

Interestingly, in support of his argument that the trial court erred in not excluding Santilli's testimony, Curry does not argue that the requests for admission were evidence upon which the trial court should have relied.[7] Rather, Curry relies on its counsel's objection to

---

[5] Although a less formal presentation may suffice, the best practice for the presentation at trial of either answers to interrogatories or requests for admissions is for counsel to attach the material to a pre-trial motion, or otherwise present the documents to the court, and then request permission from the trial judge to publish the same from the court's file to the court or jury. Then, by leave of court, counsel would read the interrogatory or request for admission and the response—or note the lack thereof—into the record.

[6] We note that, while on appeal Curry seems to argue that the facts are automatically deemed admitted by operation of law without an affirmative ruling by the trial court, Curry did not make this argument at trial. As noted above, Curry asked the trial court to either rule that requests for admissions not answered were deemed admitted or take judicial notice of the same.

[7] On appeal, Curry does not argue that the trial court erred in not relying on the admissions or that the court's conclusion that the doors were business fixtures was against the weight of the evidence because of the conclusive effect of the admissions. Curry only relies on the admissions as a basis to exclude Santilli's testimony, not as affirmative evidence supporting its claim. This is consistent with the approach taken at trial. Although prior to the beginning of the trial, Curry asked the trial court to either rule that requests for admissions not answered were

9

Santilli's testimony as evidence of the text of the requests for admissions. While Curry's counsel, in objecting to Santilli's testimony, stated what purported to be the substance of two of the requests, he did not elicit testimony from Santilli that these were requests for admissions that he received, and "[b]are assertions by counsel do not prove themselves and are not evidence of the facts presented." *Andersen v. Osmon*, 217 S.W.3d 375, 381 (Mo. App. W.D. 2007). Because Curry has not shown that the requests for admissions were ever presented or available to the trial court at or before the trial on the merits, we cannot say that the trial court abused its discretion in not excluding Santilli's testimony. *Lee*, 847 S.W.2d at 100-01.

Even if the trial court had committed error in failing to exclude Santilli's testimony about the character of the doors (a conclusion we do not reach), in order to prevail on appeal, Curry would have to demonstrate that he was prejudiced as a result of this error. *State ex rel. Scherschel v. City of Kansas City*, 470 S.W.3d 391, 399 (Mo. App. W.D. 2015) ("For evidentiary error to cause reversal, prejudice must be demonstrated." (quoting *State v. Ise*, 460 S.W.3d 448, 459 (Mo. App. W.D. 2015))). Curry does not argue that, without Santilli's testimony, the trial court's judgment would have been against the weight of the evidence. Curry, as the plaintiff, bears the burden of proof. *Fredericktown Chamber of Commerce v. Chaney*, 250 S.W.2d 820, 824 (Mo. App. 1952). Thus, even if Santilli's testimony should have been excluded, this would result in a reversal only if the evidence presented conclusively proved each of the elements of Curry's case. As the trier of fact, the trial court was free to believe or disbelieve Curry's only witness (Sweeney) and the other evidence presented by Curry. *Kansas City Live Block 125 Retail, LLC v. Bhakta*, 476 S.W.3d 326, 332 (Mo. App. W.D. 2015). And, as noted *supra*, Curry

---

deemed admitted or for the court to take judicial notice of the same, Curry did not mention the alleged conclusive admissions in its case-in-chief, or rely on the admissions in arguing, at the close of evidence, that it had carried its burden.

does not argue that the trial court erred in not relying on the admissions as evidence supporting its claim.

Curry's Point I is denied. We now turn to whether the trial court's determination that the doors were business fixtures misapplied the law or was against the weight of the evidence.[8]

The lease specifies that any "business fixtures" belong to Santilli, while any "non-business fixtures" must remain with the building. Missouri courts have discussed the distinction between business, or trade fixtures, and permanent non-business fixtures:

> "Articles annexed to realty by a tenant for the purpose of carrying on a trade or business are considered as trade fixtures and are ordinarily removable by him. That the fixture is particularly adapted to a particular type of building does not (in itself) make it irremovable. If the article is placed in the building for the sole purpose of enabling the tenant to carry on his business, it is removable; but if the article is so placed as to make the building itself peculiarly adapted and more usable for the type of business, then it is not removable."

*State ex rel. Mo. Highway & Transp. Comm'n v. Jim Lynch Toyota, Inc.*, 835 S.W.2d 421, 425 (Mo. App. E.D. 1992) (quoting *Stockton v. Tester*, 273 S.W.2d 783, 787 (Mo. App. 1954)). "Elements for consideration in distinguishing between trade fixtures and building fixtures are 1) the annexation to the realty, 2) the adaption to the use to which the realty is devoted, and 3) the intent that the object become a permanent accession to the land." *Id.* This is the same test that courts use to determine whether personal property has become a fixture. *Buchholz Mortuaries, Inc. v. Dir. of Revenue*, 113 S.W.3d 192, 193 (Mo. banc 2003) (A permanent fixture "is shown

---

[8] Curry's second point casts the trial court's alleged error as a misapplication of law. "[W]hen a party 'has admitted in its pleadings, by counsel, or through the [party's] individual testimony the basic facts of [the other party's] case[,]' . . . the issue is legal, and there is no finding of fact to which to defer." *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010) (quoting *All Am. Painting, LLC v. Fin. Sols. & Assocs., Inc.*, 315 S.W.3d 719, 723 (Mo. banc 2010)). But as we have noted, Curry does not rely on the admissions in support of his argument in Point II. Rather, Curry relies on the testimony of Sweeney and Santilli, and various exhibits. Normally, when the facts are disputed, the challenge is to the weight of the evidence supporting the trial court's determination. *Id.* But a "misapplication-of-law challenge, and an against-the-weight-of-the-evidence challenge . . . are distinct claims[, and] must appear in separate points relied on in the appellant's brief to be preserved for appellate review." *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). Despite Curry's failure to preserve a weight-of-the-evidence challenge in his point relied on, we will review, *ex gratia*, whether the judgment is against the weight of the evidence.

by: (1) annexation to the land; (2) adaptation to the location; and (3) intent of the annexor at the time of annexation.").

"The annexation element refers to the physical attachment of the property to the realty . . . ." *Herron v. Barnard*, 390 S.W.3d 901, 911-12 (Mo. App. W.D. 2013). "Annexation that may be slight and easily displaced does not prevent an article from becoming a fixture when the other elements are found." *Freeman v. Barrs*, 237 S.W.3d 285, 289 (Mo. App. S.D. 2007).

"The adaptation element refers to the characteristics of fitness or suitability for the building or premises in question." *Hoffman Mgmt. Corp. v. S.L.C. of N. Am., Inc.*, 800 S.W.2d 755, 760 (Mo. App. W.D. 1990). This element is met if the chattel at issue is "peculiarly adapted to the real property." *Id.*

The intent element refers to whether the "intention in annexing the article to the realty was to make it a permanent accession to the land." *Herron*, 390 S.W.3d at 912 (quoting *Matz v. Miami Club Rest.*, 127 S.W.2d 738, 741 (Mo. App. 1939)). "[I]ntention is to be determined as of the time the articles were annexed[,] and it is the [i]ntent of the *annexor* at the time of annexation [that] controls as to whether something is to be considered a fixture." *Id.* (internal citations and quotations omitted).

The burden is on the party asserting the existence of a fixture to prove the elements, and "'[e]ach of the elements . . . must be present to some degree, however slight.'" *Herron*, 390 S.W.3d at 909 (quoting *Wisdom v. Rollins*, 664 S.W.2d 37, 39 (Mo. App. S.D. 1984)). Again, in arguing that the trial court misapplied the law to the evidence, Curry does not rely on the effect of the admissions; instead, it relies on only the testimony of Sweeney and Santilli. Here, we need not consider either the first or second elements, because the evidence plainly supports a determination that Curry failed to prove the intent element.

12

"When an annexation is made by a tenant and is such that the chattel may be removed without material injury to the realty, there is a presumption that he did not intend to make a permanent annexation to the real estate but intended to reserve to himself the title to the chattel annexed." *Herron*, 390 S.W.3d at 912 (quoting *In re Estate of Horton*, 606 S.W.2d 792, 795 (Mo. App. S.D. 1980)). "The law looks with favor upon the right of a tenant to remove articles furnished or installed by him for the purpose of his occupancy even though they may ordinarily be termed fixtures." *Id.* (quoting *Horton*, 606 S.W.2d at 795).

Here, Santilli testified that: (1) he purchased the doors for their ease of moving around and repositioning to fit the business's changing needs; (2) he intended the doors to be "equipment" that would remain with the business, and not remain as a fixture in the building; and (3) he "did no damage to the building whatsoever" in installing or removing the doors. "[A]ll ordinary store fixtures, including showcases and shelving, business signs, and miscellaneous other appliances installed by (the tenant) may be considered to remain his personal property, unless substantial damage would be the result of removal." *Id*. at 913 (internal quotations omitted).

The trial court "is not bound by the person's testimony on" the question of intent, *Freeman*, 237 S.W.3d at 289, and Sweeney testified that the removal of the doors actually did damage the building. But "the trial court was the arbiter of the facts and was free to believe or disbelieve any of the evidence." *Kansas City Live Block 125*, 476 S.W.3d at 332. "Furthermore, this court must view the evidence in the light most favorable to the judgment," *id*., and assume the trial court resolved all issues of fact "in accordance with the result reached." Rule 73.01(c). Accordingly, we assume that the trial court believed Santilli and disbelieved Curry's evidence.[9]

---

[9] Curry included in its appendix a number of photographs entered as exhibits at trial, purporting to show that removing the doors caused damage to the building. The exhibits are not in the legal file, were not deposited

Further, even if Santilli's testimony had been excluded, the trial court could have disbelieved Sweeney. Thus, the trial court's determination that the doors were business fixtures is not against the weight of the evidence and does not erroneously apply the law.

Curry's Point II is denied.

## Conclusion

Because the requests for admissions were never filed with or presented to the trial court, we cannot say that the trial court abused its discretion in allowing Santilli to testify contrary to the admissions. Even if the trial court erred in allowing Santilli to testify, this alone does not support reversal because Curry still bore the burden of proof, and the trial court was free to disbelieve the testimony and evidence presented by Curry. Considering all of the evidence in the record, the trial court's conclusion that Curry failed to prove that the doors at issue were permanent non-business fixtures is not against the weight of the evidence and does not erroneously apply the law. The judgment is affirmed.

Karen King Mitchell, Judge

Victor C. Howard, Presiding Judge, and
Thomas H. Newton, Judge, concur.

---

with the court as exhibits, and are therefore not part of the record on appeal. "The appendix is not part of the legal file or otherwise part of the record on appeal." *Bison Park Dev., LLC v. N. Am. Sav. Bank, F.S.B.*, 399 S.W.3d 877, 882 n.7 (Mo. App. W.D. 2013). Thus, we do not consider them and "presume that they would support the trial court's judgment." *In re Estate of L.G.T.*, 442 S.W.3d 96, 106 n.9 (Mo. App. S.D. 2014).