GOLDEN RULE INSURANCE
COMPANY, et al.,
Appellants,

v.

R.S., et al., Respondents.

No. WD 72578.

Missouri Court of Appeals,
Western District.

June 19, 2012.

329

Louis A. Cohn, Overland Park, KS, Andrew G. Jubinsky, (pro hac vice), Timothy

A. Daniels, (pro hac vice), Dallas, TX, for Appellants.

Mark Roberts, Blue Springs, MO, for Respondents.

Before Division Three: KAREN KING MITCHELL, Presiding Judge, and JAMES M. SMART, JR., and GARY D. WITT, Judges.

KAREN KING MITCHELL, Presiding Judge.

This is an insurance case addressing the applicability of two policies of health insurance. The primary issue as to the Golden Rule Insurance Company policy is whether a policy application's automatic termination clause was rendered ambiguous, and thus unenforceable, by other language in the policy. We hold that the automatic termination clause was ambiguous in that it prohibited the policyholders from having any "other coverage," while another provision of the policy expressly provided that policyholders *could* have certain other types of coverage—namely other group and group-type policies. This ambiguity, however, affords no relief to the insureds, as it is unrelated to their specific circumstances in that they had no other group or group-type policies. Accordingly, we reverse the trial court's judgment in favor of the insureds as to the Golden Rule policy.

As to the PacifiCare Life and Health Insurance Company policy, the issue is whether the insureds' policies should have been rescinded based on alleged material misrepresentations regarding residency. The policy required applicants to provide their "home address." "Home address"

was not a term defined in the policy application and could mean both residence and domicile. As the insureds were residents of both Missouri and California, their identification of an address in California as their "home address" was not a material misrepresentation. Therefore, we affirm the trial court's judgment as to the PacifiCare policy.

**Facts and Procedural Background[1]**

◼ Appellant Golden Rule Insurance Company ("Golden Rule") sought a judgment declaring that (1) the medical insurance policies it issued to Respondents R.S. and R.C.H.[2] were void as of ninety days after the effective date of the Golden Rule policy in that both R.S. and R.C.H. had other medical insurance policies in effect on the date the Golden Rule policy went into effect; or (2) the policies could be terminated and rescinded back to the date upon which R.S. and R.C.H. allegedly made false statements regarding other insurance coverage. Appellant PacifiCare Life and Health Insurance Company ("PacifiCare") also sought a judgment rescinding medical insurance policies issued to R.S. and R.C.H. PacifiCare alleged that R.S. and R.C.H. misrepresented that they were residents of California at the time they applied for PacifiCare coverage.

R.S. and R.C.H. were full-time residents of California until 2003. They were domestic partners whose relationship was registered with both Los Angeles County and the State of California. Both men were HIV-positive or had AIDS and were receiving needed intravenous immunoglobu-

---

1. On appeal from a court-tried case, we review the facts in the light most favorable to the judgment. *Huff v. Integral Ins. Co.,* 354 S.W.3d 228, 229 n. 1 (Mo.App. W.D.2011).

2. Because both Respondents had been diagnosed with either Human Immunodeficiency

Virus (HIV) or Acquired Immunodeficiency Syndrome (AIDS), they will be identified by their initials rather than their names so as to protect their privacy. We intend no disrespect.

lin therapy ("IVIG") from Dr. Wiesner, and later, from Dr. Honzel, in California. Both men were too ill to continue their past employment and were receiving disability benefits from private disability insurance policies. The men continued their health insurance through COBRA[3] with their past employers until early 2004.

In May of 2003, R.S. purchased a home in Kansas City, Missouri, to be nearer to his ailing mother. R.C.H. moved into the Kansas City home in late May of 2003, and R.S. followed in June of 2003. At the time of the moves, no Missouri healthcare providers were providing IVIG therapy, so R.S. and R.C.H. understood that, periodically, they would need to return to California to continue their treatments. A close friend of the couple, Victoria Christie, who also worked for Dr. Honzel's office, allowed them to stay at her home when they traveled to California for their treatments.[4]

On February 2, 2004, facing the termination of their COBRA health insurance, R.S. and R.C.H. completed applications for replacement health insurance with three different insurance companies.[5] On an application for insurance with Golden Rule, which issued insurance to Missouri residents, the couple listed their Kansas City address as their home address. They stated that they did not have any other insurance.

R.S. and R.C.H. also completed applications for health insurance with two companies doing business with California residents: PacifiCare and Blue Shield of California ("Blue Shield"). On these applications, R.S. and R.C.H. represented that their "home address" was Christie's California address. Neither R.S. nor R.C.H. owned this property, nor did they lease it. R.S. and R.C.H. received all of their mail relating to the PacifiCare and Blue Shield policies at this California address.

All three insurance companies issued health insurance policies to R.S. and R.C.H.

The relevant portions of the Golden Rule application and policy are as follows.[6] There are two provisions in the Golden Rule policy that purport to terminate coverage in the event that the insured has or obtains other coverage. The first is in the insurance application, which states that "continuation of other coverage existing on the [effective date of this policy] for more than 90 days after [the effective date of this policy] will void this coverage" (the existing insurance prohibition).[7] The policy itself states that "insurance will automatically stop on . . . the date the covered person becomes covered under an individual plan of insurance" (the after-acquired insurance prohibition). It states further: **"TERMINATION FOR FRAUD:** We

---

3. Consolidated Omnibus Budget Reconciliation Act of 1985

4. It is unclear when R.S. and R.C.H. began staying at Christie's house. They apparently traveled to California regularly to receive treatments beginning May of 2003 when they moved to Kansas City, but the stipulated facts state that they did not stay at Christie's property until after they applied for the new insurance policies in February of 2004. There is no evidence as to where R.S. and R.C.H. stayed in California between May of 2003 and February of 2004.

5. R.S., an attorney, completed the applications for both himself and R.C.H., but R.C.H. signed his applications and approved all of the actions taken by R.S.

6. The terms of R.S.'s policy and the terms of R.C.H.'s policy are the same, and, for the sake of convenience, we will at times refer to the two policies as "the policy" or "the Golden Rule policy."

7. The "policy," by definition, specifically included all parts of the applications.

may terminate coverage of a covered person who is knowingly involved in or has knowledge of fraud or material misrepresentation in filing a claim for policy benefits." Finally, under the heading "COORDINATION OF BENEFITS" ("COB") the policy also states:

> Some people have health care coverage through more than one *plan* at the same time. COB allows these *plans* to work together so that the total amount of all benefits will never be more than 100 percent of the *allowable expenses* during any calendar year. This helps to hold down the costs of health coverage.... This Coordination of Benefits ("COB") provision applies to this *plan* when a *covered person* has health care coverage under more than one *plan*.

(Emphasis in original) ("COB provision").

The PacifiCare policies provide that:

> The company may rescind coverage if the insured person or any dependent knowingly provides false information (or misrepresents a material fact) on the enrollment application form or intentionally does not inform the company of changes to material information before coverage becomes effective. Rescinding coverage means that this policy is void and that no coverage existed at any time.

The PacifiCare application required applicants to provide their "home address."

None of the insurance companies knew that R.S. and R.C.H. had applied for insurance with the other two companies. PacifiCare paid Dr. Honzel directly for the couple's IVIG treatments. Blue Shield also apparently paid Dr. Honzel for portions of the IVIG treatment cost and paid a California pharmacy for R.S.'s and R.C.H.'s medications. Golden Rule did not pay any healthcare provider directly. Instead, R.S. would send Golden Rule copies of his statements for healthcare, which the other insurance companies had already paid, and he would affix stickers on them that read, "The physician [or the pharmacy] has been paid for these services. Please reimburse insured directly." R.S. testified that, in requesting "reimbursement," he may have chosen "incorrect wording" in that he and R.C.H. had not made payments themselves. He testified, however, that he understood the Golden Rule policy to be "a reimbursement policy" and that, by using that term, he had meant that the healthcare providers had been paid, though not by him, and that, therefore, payment was due under the Golden Rule policy.

R.S. and R.C.H. used the payments they received from Golden Rule to pay the premiums on their various insurance policies and to help with costs for their travel to California to receive their treatments. The amount they received from Golden Rule, however, exceeded the cost of premiums and identified travel expenses; it is unclear what R.S. and R.C.H. did with the balance of the money they received from Golden Rule.

At some point, United Health Care ("United"), the parent company of both Golden Rule and PacifiCare, began investigating R.S. and R.C.H. As part of the investigation, at various times, Golden Rule sent R.S. and R.C.H. several additional forms requesting information. One question asked, "Do you or any family members have other coverage (medical, indemnity, or liability) which might help cover hospital and medical expenses?" In responding to this question in 2004, R.S., on behalf of himself and R.C.H., checked the "no" box. In response to this same question, R.S., on at least one occasion in 2008, included a handwritten note on the questionnaires. The note read "no other plan." "Plan" was a defined term in the COB clause of the Golden Rule policy in-

cluding group and group-type insurance, and R.S. understood the term "plan" as used in the COB provision to exclude individual insurance policies. R.S. claims that he believed his answers to have been accurate because R.S.'s and R.C.H.'s PacifiCare and Blue Shield policies were both individual insurance policies, and thus they were not "plans" as defined by the Golden Rule policy. However, in September of 2004, on behalf of himself and R.C.H., R.S. checked the "no" box on the questionnaires' "other insurance" provision without qualifying his answers with the "no other plan" caveat.

Subsequent to the investigation, PacifiCare filed a petition, alleging that R.S. and R.C.H. had misrepresented their home address on the PacifiCare policy application as a California address when their actual home address was their Kansas City address. PacifiCare sought rescission of the policies it issued to R.S. and R.C.H. Golden Rule also filed a petition, seeking a declaratory judgment that their policies were void in that the policies automatically terminated ninety days after March 1, 2004 (their effective date), due to the presence of the PacifiCare and Blue Shield policies.[8] In the alternative, Golden Rule sought termination of the policy back to September 8, 2004, due to the allegedly false statements on R.S.'s and R.C.H.'s questionnaires regarding other insurance coverage. At some point, both Golden Rule and PacifiCare suspended payment on all of R.S.'s and R.C.H.'s medical claims. However, both companies continued to withdraw premium payments on the R.S. and R.C.H. policies.

The case was bench-tried, and the court entered judgment for R.S. and R.C.H. The trial court found that R.S. and R.C.H.

maintained dual residences: one in Kansas City and one in California. Therefore, the court concluded that R.S. and R.C.H. did not misrepresent their California address on the PacifiCare policy applications and that PacifiCare was not entitled to rescission of the policies.

The court found that "[R.S.] and [R.C.H.] believed that they were entitled to full payment of the medical charges from both Golden Rule and PacifiCare under the language of the two policies." The court also found that neither R.S. nor R.C.H. had made false or fraudulent statements to Golden Rule.

The court also made findings regarding the language in the Golden Rule insurance policy application pertaining to Golden Rule's right to automatically terminate the policies if other insurance was in place on the date the policy went into effect. The court found that the existing insurance termination clause in the applications for insurance, which purports to terminate Golden Rule's coverage ninety days after it takes effect if any other coverage continues to exist, was rendered ambiguous when considered in conjunction with the COB provision, which expressly contemplates that the insureds could possess certain other types of coverage. Construing the ambiguities against Golden Rule, the court concluded that the other insurance policies issued to R.S. and R.C.H. by PacifiCare and Blue Shield did not serve to terminate the Golden Rule coverage, even though they took effect prior to the effective date of the Golden Rule policy and remained in effect for ninety days after the effective date of the Golden Rule policy.

The court concluded that Golden Rule was not entitled to void coverage based

---

**8.** Blue Shield is not a party to this appeal. Therefore, the Blue Shield insurance is discussed in this opinion only to the extent that

it is necessary for a resolution of the issues before the Court.

either on the terms of the Golden Rule application regarding automatic termination or on the insureds' allegedly fraudulent statements.

Golden Rule and PacifiCare appeal.

## Standard of Review

■ We review court-tried cases according to the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Therefore, we affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, it misstates the law, or it misapplies the law. *Id.*

### A. Golden Rule Policy

#### I. Automatic termination

Golden Rule first argues that the trial court erred in not declaring the policies void in that the policies unambiguously provided that coverage would be voided ninety days after they took effect if R.S. and R.C.H. had other individual coverage in place at that time. We agree.

**a. Ambiguities in an insurance policy that attempts to void coverage are strictly construed against the insurer.**

■ " 'The cardinal rule for the courts in interpreting a contract, including an insurance policy, is to effectuate the parties' intent at the time of contracting.' " *Miller v. O'Brien*, 168 S.W.3d 109, 114 (Mo.App. W.D.2005) (quoting *Bailey v. Federated Mut. Ins. Co.*, 152 S.W.3d 355, 357 (Mo. App. W.D.2004)). Generally we do this by giving the language in the policy its plain and ordinary meaning. *Miller*, 168 S.W.3d at 114. The plain meaning of the various terms in an insurance policy is not determined by viewing the terms in isolation but by viewing them in reference to the whole policy. *Id.* When the words and phrases in the policy, viewed as a whole, are ambiguous, we must resort to the rules of contract construction applicable to insurance policies. *Id.* at 114–15.

■ We construe ambiguities in favor of the insured for two principal reasons:

(1) insurance is designed to furnish protection to the insured, not defeat it; ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted, or which introduce exceptions or exemptions, must be strictly construed against the insurer; and (2) as the drafter of the policy, the insurance company is in the better position to remove the ambiguity from the contract.

*Pruitt v. Farmers Ins. Co.*, 950 S.W.2d 659, 664 (Mo.App. S.D.1997).

■ To test whether an insurance policy is ambiguous, appellate courts consider the language "in the light in which it would normally be understood by the lay person who bought and paid for the policy." *Heringer v. Am. Family Mut. Ins. Co.*, 140 S.W.3d 100, 103 (Mo.App.W.D. 2004). Where a policy "promises the insured something at one point but then takes it away at another, there is an ambiguity." *Chamness v. Am. Family Mut. Ins. Co.*, 226 S.W.3d 199, 204 (Mo.App. E.D.2007). An ambiguity follows when the insurance policy contains two clauses that irreconcilably contradict one another, and, consequently, the ambiguity will be resolved in favor of the insured. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 134 (Mo. banc 2007); *Lutsky v. Blue Cross Hosp. Serv., Inc.*, 695 S.W.2d 870, 875 n. 7 (Mo. banc 1985).

■ "Proper interpretation requires that we seek to harmonize all provisions of the policy to avoid leaving some provisions without function or sense." *Kyte v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 295, 299 (Mo.App. W.D.2002).

**b. The operative clause in this case is ambiguous because the policy subsequently contradicts it.**

**1. The "existing insurance" prohibition contained in the insurance application is the clause that applies here.**

█ There are two provisions in the Golden Rule policy that purport to terminate coverage in the event that the insured has or obtains other coverage. The first, the existing insurance prohibition, is in the insurance application, which reads: "continuation of other coverage *existing* on the [effective date of this policy] for more than 90 days after [the effective date of this policy] will void this coverage." (Emphasis added.) The second, the after-acquired insurance prohibition, is contained in the policy itself, which reads: "insurance will automatically stop on ... the date the covered person *becomes* covered under an individual plan of insurance." (Emphasis added.)

The existing insurance prohibition clause applies to coverage that antedated the Golden Rule policy's effective date, and the after-acquired prohibition applies to coverage that was obtained subsequent to the Golden Rule policy's effective date. That is because the word "existing" in the application's clause evidences that the provision applies to insurance that existed *before* the effective date of the policy, and the word "becomes" in the after-acquired clause evidences that the second provision applies to insurance obtained *after* the effective date of the policy.

Here, the existing insurance prohibition clause applies, because the other insurance at issue (the PacifiCare and Blue Shield policies) existed on the effective date of the Golden Rule policy. Indeed, Golden Rule's petition seeks relief on the basis of the existing insurance prohibition clause, not the after-acquired prohibition clause: it seeks a declaration, not that the insured

"became" covered by other individual insurance after the Golden Rule policy's effective date, but that the PacifiCare and the Blue Shield policies were "effective prior to the effective date of the ... GRI Policy and remained in effect for more than 90 days."

Golden Rule, in its petition, confined its request for relief to the existing insurance prohibition clause, which applies to insurance that existed at the time the policy became effective. We will likewise focus our analysis on that provision.

**2. The existing insurance prohibition clause directly and irreconcilably conflicts with the COB provision.**

█ The existing insurance prohibition clause is contained in the insurance application, not the policy itself. Nevertheless, the application states that "this completed application ... will be made a part of" the policy. Under such circumstances, the provisions of the application will be treated as part of the policy, and provisions of the former must be construed together with the provisions of the latter. *Weisman v. Cont'l Life Ins. Co.*, 216 Mo. App. 13, 267 S.W. 21, 23 (1924).

R.S. and R.C.H. claim that Golden Rule cannot void the policy on the basis of the existing insurance prohibition clause because that clause is inconsistent with the policy in that the latter explicitly contemplates the existence of certain other types of insurance. The policy states that:

> Some people have health care coverage through more than one *plan* at the same time. COB allows these *plans* to work together so that the total amount of all benefits will never be more than 100 percent of the *allowable expenses* during any calendar year. This helps to hold down the costs of health coverage. The order of benefit determination rules de-

termine which *plan* will pay as the *primary plan* and which will be considered the *secondary plan.*

This Coordination of Benefits ("COB") provision applies to this *plan* when a *covered person* has health care coverage under more than one *plan.*

(Emphasis in original.) The COB provision defined the term "plan" as including "group insurance, *closed panel* or other forms of group or group-type coverage." (Emphasis in original.) The term "plan" expressly excluded "individual or family insurance." [9]

Thus, the existing insurance prohibition clause purports to disallow any "other coverage," while the COB provision explicitly contemplates, and, in fact, endorses ("This helps to hold down the costs of health coverage") the existence and applicability of certain other types of coverage, namely group and group-type coverage. We agree with R.S. and R.C.H. that that is a direct and irreconcilable contradiction: other insurance cannot simultaneously be prohibited and encouraged.

**3. The ambiguity in the policy does not support the coverage R.S. and R.C.H. sought and obtained.**

 A direct, irreconcilable conflict between two insurance provisions creates an ambiguity. *Seeck,* 212 S.W.3d at 134; *Lutsky,* 695 S.W.2d at 875 n. 7. The existence of an ambiguity, however, does not automatically mandate a decision on behalf of the insureds. *See Trinity Indus., Inc. v. Ins. Co. of N. Amer.,* 916 F.2d 267, 269 n. 9 (5th Cir.1990). In order for the insured to prevail, an ambiguous clause in an insurance policy must allow for alternative

reasonable readings, *one of which* supports the coverage the insured actually seeks. *See Dahmer v. Hutchison,* 315 S.W.3d 375, 377 (Mo.App. S.D.2010).

Thus, because we are faced with an ambiguity, we must determine whether one of the alternative reasonable constructions provides coverage in the manner sought by R.S. and R.C.H. *Ritchie,* 307 S.W.3d at 135. There are two reasonable interpretations to be gleaned from this ambiguity: (1) no other insurance coverage of any kind is allowed, or (2) other insurance coverage is allowed if it is group or group-type coverage. Because a construction expanding coverage favors an insured, we resolve the ambiguity created by the COB provision by determining that the insureds were permitted to have other insurance coverage if that other coverage took the form of group or group-type insurance.

That being said, the other insurance coverage that R.S. and R.C.H. obtained was not group or group-type coverage. It was undisputed that both the PacifiCare and Blue Shield policies were individual policies. Nothing about the COB provision creates an ambiguity with respect to whether an insured is permitted to have and maintain other insurance in the form of individual policies. In fact, when viewing the policy as a whole (as we must),[10] the policy is quite clear that other coverage in the form of individual policies is completely prohibited, whether antedating or post-dating the effective date of the Golden Rule policy. To demonstrate, the after-acquired insurance clause expressly states that the policy will terminate if other insurance is obtained through an indi-

---

9. It appears that R.S. and R.C.H. were fully aware of the distinction between a group and an individual insurance policy within the definition of the term "plan" in the Golden Rule policy. In 2008, when they received the questionnaire from Golden Rule asking if they had

other insurance, instead of just checking the "No" box provided, they responded by handwriting into the response "No other plan."

10. *Ritchie,* 307 S.W.3d at 135.

vidual plan. Thus, when read together, the after-acquired clause finds harmony with the COB provision: other group insurance is allowed (the COB provision), but other individual insurance is not (the after-acquired insurance clause).

R.S. and R.C.H. would have us find that the ambiguity created by the COB provision operates to completely nullify the prohibition on other coverage, thus precluding Golden Rule from voiding their policies based upon the existence of individual insurance policies through PacifiCare and Blue Shield. While this result would be warranted if the policy were ambiguous regarding the effect of the existing insurance prohibition clause on other individual coverage, the policy is not vague in this manner. Thus, nullification of the existing insurance prohibition clause in its entirety is unreasonable. There are several reasons we decline to grant such relief.

■■■ First, in resolving an ambiguity, we do not throw the baby out with the bath water. "A void part of ... [a] contract (absent elements of fraud ...) does not necessarily make the whole void...." *Gist*, 123 S.W. at 927. Rather, the question is whether the void part can be extracted from the whole while leaving the remainder intact:

> If the void part is so interwoven with other provisions as to make them all interdependent or enough of them interdependent to spoil the symmetry and perfection—the one resting on the other or furnishing a motive for the other— then the void provision strikes down the whole, but where the void part stands as an independent clause segregated from the main body and where, if eliminated by judicial construction, a perfect ... contract would remain, ... the void part might be pruned away as a dead limb

and leave the ... contract intact as live and enforceable.

*Id.*

For example, in *Ritchie*, the Supreme Court found an ambiguity to exist by virtue of an automobile insurance contract's other insurance provision that seemingly permitted "stacking" under certain limited circumstances, coupled with its limit of liability clause that seemed to preclude "stacking" altogether. *Ritchie*, 307 S.W.3d at 137–38. In resolving the ambiguity, the Supreme Court did not determine that "stacking" was always permitted under *any* circumstances (the result it appears R.S. and R.C.H. would advocate); rather, the Court found that the reasonable reading favoring an insured was that "stacking" was permitted in the limited circumstances identified in the other insurance provision of the contract and at no other time. *Id.* The Court held that the "other insurance provision reasonably could be interpreted as superseding the limit of liability provision and making coverage available to the insureds through their own additional underinsured motorist coverages with Allied." *Id.* at 138.

The same can be said of the COB provision in the Golden Rule policy; the allowance of other group and group-type insurance in the COB provision supersedes the preclusion of all other coverage in the application's provision, resulting in a contract that allows an insured to have other group or group-type coverage, but not other individual coverage.

■■■ The second reason that we disagree with R.S. and R.C.H.'s interpretation is that it does not further the principal reasons that ambiguities are construed in favor of the insured. As noted above, "ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted, or which introduce exceptions or exemptions, must be

strictly construed against the insurer." *Pruitt*, 950 S.W.2d at 664. In this case the COB provision does not "cut down, restrict, or limit" coverage already granted, nor does it "introduce exceptions or exemptions"; rather, it purports to allow other insurance that would have resulted in termination of coverage under the existing insurance prohibition clause in the application. *Id.* Further, while the insurance company was in a better position to remove the ambiguity, *id.*, its removal would not have aided R.S. or R.C.H.

In sum, while we agree with R.S. and R.C.H. that the COB provision's allowance of other group insurance created an ambiguity when compared with the application's prohibition on all other insurance, the resolution of this ambiguity does not inure to R.S. or R.C.H.'s benefit, as the other insurance they had and maintained was not group insurance; it was individual insurance, and the Golden Rule policy lacks any ambiguity with respect to its prohibition on other individual insurance. *See Mendota Ins. Co. v. Ware*, 348 S.W.3d 68, 74 n. 3 (Mo.App. W.D.2011) (" 'The fact ... that terms of a policy of insurance may be ambiguous where applied to one set of facts does not make them ambiguous as to other facts [that] come directly within the purview of such terms.' ") (quoting 2 COUCH ON INSURANCE 3d § 21:14, at 21–56 to 21–57 (2010)). Because we find Point I in favor of Golden Rule, we need not consider Golden Rule's second point regarding fraudulent misrepresentations by R.S. and R.C.H. when submitting claims.

Point I is granted.

## B. PacifiCare Policy

### I. Representation of "home address"

PacifiCare argues that the trial court erred in entering judgment for R.S. and R.C.H. in that the PacifiCare policies should have been rescinded because the insureds made material misrepresentations regarding their residency. We disagree.

While the trial court's judgment noted that an insured may have more than one "residency" for insurance purposes, PacifiCare argues that "residency" is not the same as "home address" and that "home address" should be interpreted to mean the same thing as "domicile."

A person's residency (or domicile or home address) is a question of fact, *see Pruitt*, 950 S.W.2d at 665 (holding that residency is a fact question and trier of fact to determine credibility of evidence at trial); and therefore we defer to the trial court's findings unless they are not supported by substantial evidence or are against the weight of the evidence. *Murphy*, 536 S.W.2d at 32. "Appellate courts defer to the trial court on factual issues 'because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles [that] may not be completely revealed by the record.' " *White v. Dir. of Revenue*, 321 S.W.3d 298, 308–09 (Mo. banc 2010) (quoting *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 652 (Mo. banc 2009)).

"Home address" is not a term defined in the policy application. When a term is not defined by the insurer, we "are free to give a reasonable construction to the term, applying general contract principles and resolving doubts in favor of the insured." *Peck*, 169 S.W.3d at 568. The dictionary definition supplied by PacifiCare's own brief equates "home" with *both* residence and domicile. It follows, then, that either interpretation could be reasonable and that we should resolve the doubt in favor of the insureds; in this case, that would mean equating "home address" with "residence." An interpretation of "home

address" that resembles "residence" is particularly reasonable in this case where the policy is for health insurance, and the insureds received *all* of their medical treatments in a state other than what might be their "domicile."

■ Using the definition of "home address" that equates to a person's "residence" instead of "domicile," it is clear that, under both Missouri and California [11] law, a person may have more than one home address for insurance purposes. *Pruitt,* 950 S.W.2d at 663; *Utley v. Allstate Ins. Co.,* 19 Cal.App.4th 815, 822, 24 Cal.Rptr.2d 1 (1993). The evidence supporting the trial court's finding that R.S. and R.C.H. were residents of both California and Missouri (and thus had two "home addresses") is as follows: the insureds received *all* of their medical treatments in California, stayed at the California home they listed as their "home address" on their applications, and received all policy-related mail at that same address, presumably even when they were not physically in California. Also, R.S. and R.C.H. (1) registered their domestic partnership in California; (2) lived in California full-time previously; (3) bought the Missouri home only to care for R.S.'s ailing mother; and (4) intended to return to California to once again live there exclusively. In addition, the men participated in other activities in California during their stays. For example, R.S. remained on the board of a California charity even after the couple purchased the Kansas City home.

Accordingly, the trial court did not err in entering judgment in R.S. and R.C.H.'s favor in that there was substantial evidence to support the conclusion that they maintained dual residencies and therefore did not misrepresent their residency in the PacifiCare application.

Point III is denied.

## Conclusion

Because we find that the ambiguity in Golden Rule's policy with respect to the insureds' right to have other *group* health insurance after the effective date of the Golden Rule policy is inapplicable to their situation, and because we find that the Golden Rule policy unambiguously precluded the insureds from having and maintaining other *individual* insurance policies more than ninety days after the effective date of the Golden Rule policy, we reverse the trial court's judgment in favor of the insureds on Golden Rule's declaratory judgment action. We further remand the case back to the trial court for determination of damages.

Because we find that PacifiCare was not entitled to terminate the insurance policies issued to R.S. and R.C.H. based upon alleged material misrepresentations, we affirm the judgment of the trial court with respect to PacifiCare's rescission claims.

JAMES M. SMART, JR., and GARY D. WITT, Judges, concur.

---

11. The PacifiCare policy states that California law applies to issues dealing with the policy.