OWNERS INSURANCE COMPANY,
Appellant,

v.

Vicki CRAIG and Chris Craig,
Respondents.

No. SC 95843

Supreme Court of Missouri,
en banc.

Opinion issued April 4, 2017

Owners was represented by Russell F. Watters and T. Michael Ward of Brown & James PC in St. Louis, (314) 421-3400.

The Craigs were represented by Jeffrey M. Bauer and Steven B. Garner of Strong, Garner, Bauer PC in Springfield, (417) 887-4300.

Zel M. Fischer, Judge

Owners Insurance Company appeals a summary judgment entered in favor of its policyholders Vicki Craig and Chris Craig that denied Owners the right to reduce the amount paid pursuant to its underinsured motorist ("UIM") coverage by the amount paid by the at-fault motorist's liability in-

surer. Because the policy at issue unambiguously provides for such set-off, the circuit court's judgment is reversed and the case is remanded.

**Factual and Procedural History**

■ Owners issued the Craigs a policy with UIM coverage.[1] The policy's declarations list "$250,000 per person" as the UIM "limit," but the "Limit of Liability" section in the UIM endorsement states:

4. LIMIT OF LIABILITY

  a. The Limits of Liability stated in the Declarations for Underinsured Motorist Coverage are for reference purposes only. Under no circumstances do we have a duty to pay you or any person entitled to Underinsured Motorist Coverage under this policy the entire Limits of Liability stated in the Declarations for this coverage.

The policy then contains "set-off" provisions:

  b. Subject to the Limits of Liability stated in the Declarations for Underinsured Motorist Coverage and paragraph 4.a. above, our payment for Underinsured Motorist Coverage shall not exceed the lowest of:

  (1) the amount by which the Underinsured Motorist Coverage Limits of Liability stated in the Declarations exceed the total limits of all bodily injury liability bonds and liability insurance policies available to the owner or operator of the underinsured automobile; or

  (2) the amount by which compensatory damages, including but not limited to loss of consortium, be-

1. "The purpose of underinsured motorist coverage is to provide insurance coverage for insureds who have been bodily injured by a negligent motorist whose own automobile lia-

bility insurance coverage is insufficient to pay for the injured person's actual damages." *Wasson v. Shelter Mut. Ins. Co.,* 358 S.W.3d 113, 117 (Mo. App. W.D. 2011).

cause of bodily injury exceed the total limits of all bodily injury liability bonds and liability insurance policies available to the owner or operator of the underinsured automobile.

This language clearly provides that Owners will pay the declarations' listed limit amount minus what is paid by the underinsured motorist's policy if damages exceed the declarations' listed limit amount, or damages minus what is paid by the underinsured motorist's policy if damages do not exceed the declarations' listed limit amount. As such, these provisions ensure Owners will never be obligated to pay the full amount the declarations list as the UIM "limit." [2]

With this policy in place, Vicki was injured in an accident when her vehicle was struck by one driven by another motorist; she incurred damages exceeding $300,000. Because the at-fault motorist was insured under a Shelter Insurance policy with a liability limit of $50,000, Shelter Insurance paid the Craigs $50,000. The Craigs then turned to Owners, seeking $250,000, the declarations' listed UIM limit amount. Instead, Owners paid the Craigs $200,000, citing the set-off provisions that allowed them to deduct the $50,000 Shelter Insurance paid on behalf of the at-fault motorist. Owners then sought a declaratory judgment over the disputed $50,000, and both sides moved for summary judgment with a joint stipulation of facts. The circuit court ruled the policy was ambiguous and entered summary judgment in favor of the Craigs. Owners appealed and, pursuant to article V, § 10 of the Missouri Constitution, the case was transferred to this Court by certification of a dissenting judge after opinion by the court of appeals.

## Standard of Review

"Whether to grant summary judgment is an issue of law that this Court determines *de novo*." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). "The interpretation of an insurance policy is a question of law that this Court also determines *de novo*." *Id.*

## Analysis

Owners argues that the policy unambiguously provides for the $50,000 set-off, that the policy never promises to pay up to the full amount listed in the declarations but expressly states in the UIM endorsement that such amount is for reference purposes only, and that the declarations alone do not promise coverage. The Craigs argue the policy is ambiguous because, despite the language in the UIM endorsement, the declarations list $250,000 as the UIM limit and other portions of the policy reference the declarations as containing or describing the policy's limits of liability.[3]

---

**2.** Because the coverage relates to *underinsured* motorists, rather than *uninsured* motorists, the amount paid on behalf of the at-fault motorist will always be greater than zero. *See Manner v. Schiermeier*, 393 S.W.3d 58, 66 n.8 (Mo. banc 2013).

**3.** The Craigs point to an introductory section titled "A Quick Guide to Your Policy" on the policy's cover sheet that states, "The DECLARATIONS contain: ... LIMITS OF LIABILITY," as well as a statement on the first page of the policy that says, "The attached Declarations describe the automobile(s) we insure

and the Coverages and Limits of Liability for which you have paid a premium." The Craigs also argue Owners failed to provide the full policy when it was purchased and went into effect, but that allegation was not part of the stipulated facts before the circuit court. "Where the trial court's decision was based on stipulated facts, the only question for this Court is whether the trial court drew the proper legal conclusions from the facts stipulated." *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988).

"An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Seeck*, 212 S.W.3d at 132 (internal quotations omitted). Additionally, "it is well-settled that where one section of an insurance policy promises coverage and another takes it away, the contract is ambiguous." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 140–41 (Mo. banc 2009). An insured cannot create an ambiguity by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole. Such a request for a "truncated consideration of portions of the ... policy is unavailing. 'Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions.'" *Dutton v. Am. Family Mut. Ins. Co.*, 454 S.W.3d 319, 323-24 (Mo. banc 2015); *accord Ritchie*, 307 S.W.3d at 135 (When determining whether an ambiguity exists, "[c]ourts should not interpret policy provisions in isolation but rather evaluate policies as a whole."). Any ambiguity is resolved in favor of the insured. *Id.* But "[a]bsent an ambiguity, an insurance policy must be enforced according to its terms." *Seeck*, 212 S.W.3d at 132.

In the UIM context, this Court has previously held that an ambiguity exists when the policy contains both: (1) express language indicating the insurer will indeed pay up to the declarations' listed limit amount; and (2) set-off provisions ensuring the insurer will never be obligated to pay such amount. *See Manner*, 393 S.W.3d at 66; *Ritchie*, 307 S.W.3d at 140-41; *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690–93 (Mo. banc 2009). The ambiguity arises from the fact that both statements cannot be true; either the insurer will sometimes pay up to the declarations listed limit, or the amount it will pay always will be limited by the amount paid by the underinsured motorist. Here, there is no such internal inconsistency or contradiction as, unlike in cases such as *Jones*, the policy contains no express language indicating the insurer will pay up to the declarations' listed limit amount. In fact, the "Limit of Liability" section in the UIM endorsement contains the opposite, stating the declarations' listed limit amount is "for reference purposes only" and "[u]nder no circumstances" will Owners have a duty to pay that entire amount. Essentially, this policy takes a form that this Court previously suggested would be enforceable:

> A policy that plainly states it only will pay the difference between the amount recovered from the underinsured motorist and the [declarations' listed limit amount] is enforceable. In such a case, the mere fact that [the declarations' listed limit amount] will never be paid out is not misleading, for the policy never suggests that this is its liability limit and never implies that it may pay out that amount.

*Ritchie*, 307 S.W.3d at 141 n.10.

While the Craigs point to the declarations' listed limit amount and other portions of the policy that make bare, general references to the declarations containing the limit of liability, the declarations "are introductory only and subject to refinement and definition in the body of the policy." *Peters v. Farmers Ins. Co.*, 726 S.W.2d 749, 751 (Mo. banc 1987). The declarations "do not grant any coverage. The declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage." *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439

S.W.3d 215, 221 (Mo. banc 2014). Evaluating the policy as a whole, it unambiguously provides that the declarations' listed limit amount serves only as a reference point for use with the set-off provisions, which are likewise unambiguous.[4]

## Conclusion

The circuit court's judgment is reversed and the case is remanded.

Breckenridge, C.J., Stith, Wilson and Russell, JJ., concur; Draper, J., dissents in separate opinion filed.

George W. Draper III, Judge, dissenting.

I concur in the principal opinion's holding reaffirming the principle that insurance companies may issue policies with set-off provisions. However, I respectfully dissent because I would find that Owners Insurance Company's (hereinafter, "Owners") underinsured motorist coverage policy (hereinafter, "UIM") issued to Vicki and Chris Craig (hereinafter and collectively, "Insured") contained ambiguous provisions. Therefore, I would affirm the trial court's judgment.

Courts do not read provisions of an insurance contract in isolation but rather evaluate the entire policy as a whole. *Manner v. Schiermeier*, 393 S.W.3d 58, 65 (Mo. banc 2013). "Interpretation of an insurance policy and the determination of whether provisions are ambiguous are questions of law, subject to *de novo* review." *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. banc 2015). "In construing the terms of an insurance policy, this Court applies 'the meaning which would be attached by an ordinary person of average understanding if purchasing insurance,' and resolves ambiguities in favor of the insured." *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. banc 2009) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). Additionally, "it is well-settled that where one section of an insurance policy promises coverage and another takes it away, the contract is ambiguous." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 140–41 (Mo. banc 2009).

In this case, the principal opinion suggests Owners crafted a limitation of liability provision that this Court tacitly approved in *Ritchie*. See *Ritchie*, 307 S.W.3d at 141 n.10. Owners placed this set-off provision in its policy, which under any possible circumstance prevents Insured from recovering the full amount of the UIM policy limits. While a set-off provision may be used to prevent double recovery as explained in *Jones*, 287 S.W.3d at 693, I believe the principal opinion read the set-off provision in Owners' policy in isolation and failed to look at all of the provisions used in the UIM coverage policy.

In Owners' UIM policy language, there is an additional clause explaining its cover-

4. The glaring weakness in the dissent is that, while purporting to condemn reading policy provisions in isolation, it is based on nothing more than the cherry-picking of an isolated provision and presenting it without context in an effort to create an ambiguity. The "Other Insurance" provision relied on by the dissent applies only to the "Liability Coverage" section of the policy. The UIM endorsement, which provides separate coverage, has its own "Other Insurance" provision expressly stating that it "shall not be construed to increase the Limit of Liability for Underinsured Motorist Coverage described in 4. LIMIT OF LIABILITY immediately above for Underinsured Motorist Coverage." This Court will not "create an ambiguity under the policy language where none exists so as to construe the imaginary ambiguity in such a way to reach a result which some might consider desirable but which is not otherwise permissible under the policy or the law." *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 142 (Mo. banc 1980).

age.[1] It states:

2. COVERAGE

    a. We will pay compensatory damages, including but not limited to loss of consortium, that any person is legally entitled to recover from the owner or operator of an underinsured automobile for bodily injury sustained by an injured person while occupying an automobile that is covered by SECTION II—LIABILTIY COVERAGE of the policy.

Pursuant to the policy's liability for coverage, it states:

6. OTHER INSURANCE

    This provision governs the relationship of this policy with insurance policies issued by insurance companies other than us. It does not define our limit of liability to pay any overage provided by this policy and shall not be construed to increase any limit of liability described under 4. LIMIT OF LIABILITY. Except as stated below, the Liability Coverage provided by this policy for your automobile shall be primary and with regard to any other automobile to which it applies, *coverage shall be excess of any other applicable automobile liability insurance.*

(Emphasis added). Additionally the declarations page indicates Insured contracted

for UIM limits of up to $250,000 per person and up to $500,000 per occurrence.

While the "LIMIT OF LIABILITY" provision seeks to set off any amount of recovery from the policy limits stated on the declarations page, the "OTHER INSURANCE" provision clearly states that any coverage Owners provides is in excess of recovery from any other insurance provider. Allowing Owners to set off any recovered amount from Insured's policy limits ensures that Insured will never recover the full amount of the stated liability limits because there will always be some recovery from an underinsured motorist.[2] Yet, the policy clearly provides that Owners' coverage is in excess of any other insurance. The "reasonable expectation of an insurance buyer is to purchase protection against large losses, and cover when the other driver's insurance does not satisfy those losses." *Zemelman v. Equity Mut. Ins. Co.*, 935 S.W.2d 673, 679 (Mo. App. W.D. 1996).

Here, Insured chose to pay for $250,000 per person and $500,000 per occurrence in UIM coverage, not $250,000 minus the amount recovered from the underinsured driver who caused more damage than the driver was insured to pay. Because Owners' policy appears in one section to provide any underinsurance coverage in excess of other coverage and another section prevents the full recovery of the declared policy limits without exception, there is an ambiguity. *See Ritchie*, 307 S.W.3d at 140–

---

1. While the principal opinion asserts that these are "cherry-picked," isolated provisions, these provisions are referenced within the UIM portion of the policy. Evaluating the policy as a whole, I believe there is an ambiguity within the policy in that an ordinary person of average understanding would believe that he or she purchased UIM coverage that could be applied in excess of any other automobile liability insurance.

2. All Missouri drivers are required to provide liability insurance of "twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident." Section 303.190.2(2), RSMo 2000.

41; *Seeck*, 212 S.W.3d at 133. Accordingly, I would affirm the trial court's judgment.