Philip M. Hess, Judge
Introduction
Vera Worley ("Appellant") appeals from the entry of summary judgment in the Circuit Court of Ste. Genevieve County on Appellant's claim for damages under an insurance contract with Cornerstone National Insurance Company ("Respondent") for underinsured motorist ("UIM") coverage. Appellant's sole point of error is the trial court erred by failing to determine she was entitled to the full UIM coverage under her policy. Appellant asserts the UIM limit of liability section of her policy was ambiguous, and therefore should be construed in favor of coverage. We agree with Appellant that due to an ambiguity under Respondent's interpretation of the policy, Appellant is entitled to full UIM coverage. Accordingly, we reverse and remand.
Factual Background
The parties stipulated to the following facts. Appellant was walking on Basler Drive in Ste. Genevieve, Missouri, when she was struck by a vehicle driven by Donna Bullard ("Tortfeasor"). As a direct result of the negligence of Tortfeasor, Appellant *538 sustained injuries to her head, lower back, right knee, and left elbow. Consequently, Appellant suffered pain, disability, and anxiety, and incurred medical charges in excess of $100,000.
Appellant was personally insured under an insurance policy (the "Policy") with Respondent at the time of the accident. The Policy included $100,000 of UIM coverage.
Appellant recovered a settlement from Tortfeasor's insurance carrier for $50,000 dollars, which represented the limits of liability of Tortfeasor's insurance policy. Appellant then sought recovery from Respondent under the UIM coverage in the Policy
Respondent determined that it was entitled to a $50,000 reduction in its policy limit of UIM coverage because Tortfeasor's insurance carrier already paid Appellant $50,000. This would mean Appellant could only recover $50,000 under the Policy's UIM coverage.
Appellant filed a vexatious refusal to pay claim against Respondent. The parties reached a compromise agreement, wherein Appellant agreed to dismiss her vexatious refusal claim, and Respondent agreed to stipulate both that Tortfeasor was an underinsured motorist under the Policy, and Appellant's damages were in excess of $150,000.
Both parties filed motions for summary judgment. The parties agreed the only issue presented was whether Appellant is entitled to UIM Policy limit proceeds of $100,000, or whether Respondent is entitled to a $50,000 reduction, resulting in a judgment against Respondent of $50,000.
Following oral arguments on the parties' motions, the trial court entered judgment in favor of Respondent and ordered Respondent to pay $50,000 to Appellant. This appeal follows.
Relevant Law
An appellate court reviews the trial court's grant of summary judgment de novo. ITT Comm'l Fin. Corp. v. Mid-America Marine Supply Corp. , 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Taylor v. Zoltek Companies, Inc., 18 S.W.3d 541, 543 (Mo. App. E.D. 2000).
The interpretation of an insurance policy is also a question of law that this Court determines de novo. Seeck v. Geico General Ins. Co., 212 S.W.3d 129, 132 (Mo. banc 2007). "In construing the terms of an insurance policy, this Court applies 'the meaning which would be attached by an ordinary person of average understanding if purchasing insurance.' " Jones v. Mid-Cent. Ins. Co. , 287 S.W.3d 687, 690 (Mo. banc 2009). Furthermore, we resolve ambiguities in favor of the insured. Id.
"An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." Id. at 690 (quoting Seeck, 212 S.W.3d at 132 ). "Moreover, [i]f a contract promises something at one point and takes it away at another, there is an ambiguity." Id. The reasons why ambiguities are construed in favor of the insured include the following:
(1) insurance is designed to furnish protection to the insured, not defeat it; ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted, or which introduce exceptions or exemptions, must be strictly construed against the insurer; and (2) as the drafter of the policy, the insurance company is in the better position *539 to remove the ambiguity from the contract.
Golden Rule Ins. Co. v. R.S. , 368 S.W.3d 327, 334 (Mo. App. W.D. 2012) (quoting Pruitt v. Farmers Ins. Co., 950 S.W.2d 659, 664 (Mo. App. S.D. 1997) ).
Discussion
Appellant's sole point on appeal is the trial court erred by failing to determine she was entitled to the full $100,000 UIM coverage under the Policy. Specifically, Appellant argues the UIM limit of liability section of the Policy was ambiguous and therefore should be construed in her favor. Respondent contends the limit of liability section unambiguously informed Appellant the limit of liability for UIM coverage was subject to a reduction by any and all sums paid by a liable tortfeasor to Appellant.
The limit of liability section states, in relevant part:
B. When two limits of liability are shown in the Declarations for Underinsured Motorist Coverage:
The limit of liability shown in the Declarations[1] for each person for this coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for this coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident. This is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
However, the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy."
(Emphasis added).
Appellant argues the above-referenced language is ambiguous because it states the Policy's $100,000 UIM per person limit is the most Respondent will pay, but then seeks to reduce that limit of liability by all sums paid by or on behalf of the underinsured motorist. Appellant asserts this guarantees that Respondent will never pay the $100,000 limit, because an underinsured motorist will necessarily, by definition,[2] have an insurance policy that will pay some amount on behalf of the underinsured motorist. Appellant argues the ambiguity created in the limit of liability section should be construed in her favor, and therefore she is entitled to the full $100,000 per person UIM limit without any reduction.
Appellant cites to Jones v. Mid-Cent. Ins. Co., 287 S.W.3d 687 (Mo. banc 2009), in support. Jones involved similar facts to the present case. In that case, the plaintiffs were driving in a pickup truck when it was struck by another vehicle. Id. at 689. The driver of the other vehicle was liable for the collision. Id. Each of the plaintiffs suffered in excess of $150,000 in total damages, *540 but the driver of the other vehicle's insurance policy only had liability limits of $50,000 per person and $100,000 per occurrence. Id. The policy paid each plaintiff $50,000. Id.
The plaintiffs were insured under a policy with Mid-Century. Id. The policy contained a UIM provision that provided coverage up to $100,000 per person, and $300,000 per occurrence. Id. The plaintiffs each filed claims seeking coverage up to the $100,000 policy limit provided in the UIM provision. Id.
Although the declarations page of the policy said it provided $100,000 in UIM coverage per person, and $300,000 per occurrence, Mid-Century argued that it was only liable for $50,000 to each plaintiff because subsection (f) of its limit of liability section allowed it to deduct from its coverage any amounts the insured received from the tortfeasor. Id. at 690. The relevant portions of the Mid-Century policy were as follows:
Limit of Liability
a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of UNDERinsured Motorist Coverage stated in the policy, and the most we will pay will be the lesser of:
1. The difference between the amount of an insured person's damages for bodily injury, and the amount paid to that insured person by or for any person or organization who is or may be held legally liable for the bodily injury; or
2. The limits of liability of this coverage
b. Subject to subsections a. and c.-h. in this Limits of Liability section, we will pay up to the limits of liability shown in the schedule below as shown in the Declarations.
?
f. The amount of UNDERinsured Motorist Coverage we will pay shall be reduced by any amount paid or payable to or for an insured person;
i. by or for any person or organization who is or may held [sic] legally liable for the bodily injury to an insured person; or
ii. for bodily injury under the liability coverage of this policy....
Id. (italicized emphasis added by the Missouri Supreme Court).
On appeal, the Court held that Mid-Century's interpretation of subsection (f) conflicted with subsection (b)'s statement that it would "pay up to the limits of liability shown in the schedule below as shown in the Declarations"-i.e., that it would pay up to $100,000. Id. at 692. This was because Mid-Century would never pay its total limit of liability shown on the schedule if it were entitled to first deduct any amounts received from the tortfeasor's insurer. Id. As the Court explained, "in the case of underinsured motorist coverage, some amount always will have been received from the tortfeasor-that is why the insured is seeking to collect under insured rather than un insured motorist coverage." Id. (emphasis in the original).
The Court held that, to avoid this conflict, one would have to insert additional words into subsection (a)(2) as follows:
Limit of Liability
a. Our liability under the UNDERinsured Motorist Coverage cannot exceed the limits of UNDERinsured Motorist Coverage stated in the policy, *541 and the most we will pay will be the lesser of:
1. The difference between the amount of an insured person's damages for bodily injury, and the amount paid to that insured person by or for any person or organization who is or may be held legally liable for the bodily injury; or
2. The limits of liability of this coverage minus the amount already paid to that insured person.
Id. at 691 (emphasis in original).
Accordingly, the Court rejected Mid-Century's interpretation of subsection (f) due to its conflict with subsections (a) and (b). Instead, the Court interpreted subsection (f) to mean that "in determining the total damages to which the underinsured motorist coverage will be applied, the amount of money already received from the tortfeasor must be deducted." Id. at 693. For example, if the plaintiffs "suffered only $125,000 in damages, and had received $50,000 from the tortfeasor, then the $50,000 received would be deducted from the total of $125,000 in damages and the underinsured motorist coverage would supply the remaining $75,000." Id.
Respondent argues the present case is distinguishable from Jones because the set-off language in the Policy's UIM limit of liability is contained in the same section as the language indicating Respondent would pay up to the declarations' listed limit amount. Respondent argues "[w]here in Jones there was coverage granted in section a, then 'taken away' in section f, the [Policy] never grants the coverage in the first place."
We disagree with Respondent's argument that including the conflicting language in the same section resolves the ambiguity here. As we will explain below, regardless of which section the language is contained in, Respondent's interpretation of the language creates a conflict. "If a contract promises something at one point and takes it away at another, there is an ambiguity." Jones , 287 S.W.3d at 690. Furthermore, language will also be deemed ambiguous "if it is reasonably open to different constructions." Id.
The Missouri Supreme Court summarized its holdings in Jones and related UIM limit of liability cases in Owners Insurance Company v. Craig, 514 S.W.3d 614 (Mo. banc 2017) :
[A]n ambiguity exists when the policy contains both: 1) express language indicating the insurer will indeed pay up to the declarations' listed limit amount; and 2) set-off provisions ensuring the insurer will never be obligated to pay such amount. See Manner , 393 S.W.3d at 66 ; Ritchie , 307 S.W.3d at 140-41 ; Jones v. Mid-Century Ins. Co. , 287 S.W.3d 687, 690-93 (Mo. banc 2009). The ambiguity arises from the fact that both statements cannot be true; either the insurer will sometimes pay up to the declarations listed limit, or the amount it will pay always will be limited by the amount paid by the underinsured motorist.
Analyzing the present case under Craig[3] and Jones , we first note the express *542 language in the Policy's Limit of Liability provision indicates that Respondent will pay up to the Declarations' listed amount:
The limit of liability shown in the Declarations for each person for this coverage is our maximum limit of liability for all damages .... Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for this coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident. This is the most we will pay ....
Second, under Respondent's interpretation, the Policy's set-off provision ensures that Respondent will never be obligated to pay the amount listed in the Declaration. Accordingly, as the Court held in Jones, Respondent's interpretation is "at best, in conflict ... and is, at worst, misleading." Jones, 287 S.W.3d at 691. Putting this language in the same section does not resolve its conflict or its misleading nature. Conflicting and misleading language is ambiguous because it is duplicitous. See id. at 690.
Respondent further contends that its Policy complies with the Missouri Supreme Court's holding in Ritchie v. Allied Property & Casualty Insurance Company , 307 S.W.3d 132 (Mo. banc 2009), a UIM case with similar facts to those presented here and in Jones .
In Ritchie , the plaintiff was injured by an underinsured motorist, and suffered $1.8 million in damages. Id. The plaintiff recovered $60,000 from the underinsured motorist's insurer. The plaintiff's own insurer, Allied Property and Casualty Insurance Company ("Allied"), provided UIM coverage which it listed in its declarations page as $100,000 per person and $300,000 per accident. After the plaintiff sought recovery from Allied, Allied argued that it was entitled to a set-off of $60,000, which would result in it paying the insured only $40,000.
Like the present case, the first paragraph of the policy's UIM limit of liability section stated "the most we will pay" and "our maximum limit of liability for all damages" is the amount listed in the declarations page. Id. In the second paragraph of the limit of liability section, it stated, "The limit of liability shall be reduced by all sums ... [p]aid because of 'bodily injury' or by or on behalf of persons [or] organizations who may be legally responsible." Id. This language is nearly identical to the language used in the limit of liability section in the present case.
Allied argued the policy's limit of liability section entitled Allied to a $60,000 set-off against the liability it owed the insured. Id. The Court disagreed and held Allied's proposed interpretation created an ambiguity. Id. The Court resolved the ambiguity in a manner similar to the Jones Court, holding that Allied could deduct the $60,000 received from the tortfeasor from the total damages suffered by the insured. Id. This reduced the damages from $1.8 million to $1.74 million. As this amount exceeded the UIM policy limit, Allied was ordered to pay the full policy limit.
Respondent argues Ritchie supports its position because its Policy complied with the following language from a footnote in Ritchie :
A policy that plainly states that it only will pay the difference between the amount recovered from the underinsured motorist and the [declarations'] listed amount is enforceable. In such a case, the mere fact that [the declarations'
*543 listed limit amount] will never be paid out is not misleading, for the policy never suggests that this is its liability limit and never implies that it may pay out that amount.
Ritchie v. Allied Prop. & Cas. Ins. Co. , 307 S.W.3d 132, 141 n.10 (Mo. banc 2009). However, Respondent fails to quote the rest of the footnote:
That is not the case here, however. The policy says it provides $100,000 in underinsured motorist coverage but, in fact, under the insurer's interpretation of the policy, it will never pay that amount. That creates an ambiguity resolved by giving the language on which the insurer relies an alternative interpretation that will give effect to all of the policy provisions, as the Court ... held in Jones, 287 S.W.3d at 690. (Emphasis added).
Id.
We disagree with Respondent that Ritchie in any way supports Respondent's argument on appeal. Instead, Ritchie strongly supports Appellant's position due to the similarity in the relevant policy language between Ritchie and the present case. As already discussed, the Policy here states that it will pay up to $100,000 in UIM coverage, but under Respondent's interpretation of the Policy, it will never pay that amount. Under the holdings in Jones, Ritchie, and Craig, this interpretation creates an ambiguity.
The existence of an ambiguity, however, does not automatically mandate a decision on behalf of the insured. Golden Rule , 368 S.W.3d at 336. In order for the insured to prevail, an ambiguous clause in an insurance policy must allow for an alternative reasonable reading which supports the coverage the insured seeks. Id. Here, such an alternative reasonable reading exists if we interpret the challenged Policy language as the Missouri Supreme Court did with similar language in Jones and Ritchie. Therefore, we will interpret the language in the UIM limit of liability section which states that "[t]he limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible," to mean that in determining the total damages to which the UIM coverage will be applied, the amount of money already received from a tortfeasor must first be deducted. Because Appellant suffered at least $150,000 in total damages, deducting the $50,000 received from Tortfeasor will still meet or exceed the Policy's limit of $100,000. Accordingly, Respondent must pay Appellant the Policy's full UIM limit.
Conclusion
The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.
Lisa P. Page, P.J. and Roy L. Richter, J. concur.

The Declarations listed underinsured motorist coverage as $100,000 per person, and $300,000 per accident.

An "underinsured motor vehicle" is defined in the Policy as a vehicle "to which a bodily injury liability bond or policy applies at the time of the accident, but its limit for bodily injury liability is less than the limit of the liability for this coverage."

We note the Craig case involved a "set-off" provision in its UIM limit of liability section similar to the present case. 514 S.W.3d at 616. In Craig, however, the Court did not find the UIM limit of liability provision at issue was ambiguous. This was because the first sentence of the limit of liability section provided: "The Limits of Liability stated in the Declarations for Underinsured Motorist Coverage are for reference purposes only. Under no circumstances do we have a duty to pay you or any person entitled to Underinsured Motorist Coverage under this policy the entire Limits of Liability stated in the Declarations for this coverage." Id. (Emphasis added). Respondent conceded during oral argument that the "for reference purposes only" language and other similar language used in the Craig policy is not present in the Policy here.