

# Missouri Court of Appeals
## Southern District

### In Division

In the Estate of:  )
QUENTIN LEE JONES, Deceased,  )
 )
MARY BETH JONES,  )
 )
        Appellant,  )
 )
v.  )    No. SD38239
 )    Filed: August 15, 2024
ADAM CHRISTOPHER JONES,  )
 )
        Respondent.  )

APPEAL FROM THE CIRCUIT COURT OF POLK COUNTY

Honorable Randolph L. Blosch, Associate Circuit Judge

**<u>AFFIRMED</u>**

After the 2023 death of Quentin Jones (Decedent), his son, Adam Jones (Son), filed an application for letters of administration with the probate division of the Polk County Circuit Court (Probate Division). Letters of administration were issued to Son. Thereafter, Decedent's surviving spouse, Mary Beth Jones (Spouse), filed a motion to substitute herself for Son as the estate's personal representative and to transfer the estate proceedings to Hickory County. Those two requests were denied, and Spouse appealed.

Spouse's motion to substitute was essentially a request to revoke the letters of administration issued to Son and to issue new letters to her. The denial of that request is

appealable. *See* § 472.160.1(13) (an order denying a motion to revoke letters is appealable).[1]

Spouse presents two points for review. Finding no merit in either point, we affirm.

**Standard of Review**

***In re Estate of Blair***, 317 S.W.3d 84 (Mo. App. 2010), provides the following summary of the applicable standard of review for this appeal:

> In this court-tried case, our review is governed by Rule 84.13(d) and the principles articulated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This Court must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. The trial court's ruling on questions of law is reviewed *de novo*. We review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. We defer to the trial court's determination of witness credibility and recognize that the court is free to accept or reject all, part or none of the testimony presented.

*Est. of Blair*, 317 S.W.3d at 86 (internal footnote, quotation marks and citations omitted).

**Factual and Procedural Background**

Decedent died intestate on March 31, 2023, at a home in Polk County owned by his father (Father). At the time of Decedent's death, he owned a home in Hickory County at which Spouse resided.

On May 25, 2023, Son filed an application for letters of administration with the Probate Division. Letters were issued to Son the next day. On June 5, 2023, the Probate Division entered orders authorizing Son to take charge of the Hickory County home and instructing Spouse to cease and desist from disposing of any assets belonging to Decedent's estate. Spouse was served the following week with these orders and a notice to vacate the

---

[1] All statutory references are to RSMo (2016), unless otherwise specified. All rule references are to Missouri Court Rules (2023).

Hickory County home. In late June, the Probate Division ordered Son to sell the Hickory County home.

On July 6, 2023, Spouse filed a motion with the Probate Division requesting that the court: (1) substitute her for Son as the estate's personal representative; and (2) transfer the estate proceedings to the Hickory County Circuit Court. The Probate Division held a hearing on Spouse's motion on September 6, 2023, at which Spouse and Son both testified. Thereafter, the Probate Division denied Spouse's motion and issued an order providing its findings of fact and conclusions of law. This appeal followed. Additional facts relevant to each point on appeal are included below.

**Discussion and Decision**

*Point 1*

In Spouse's first point, she challenges the Probate Division's finding that Decedent was domiciled in Polk County. The following additional facts are relevant to this point.

Decedent bought the Hickory County home in 2006 and moved in with Spouse, whom he married in 2010. Decedent was the sole owner of the home and did not own any other real estate in Missouri. Spouse and Decedent lived together in the home until 2023. On March 18th of that year, Decedent and Spouse had a verbal altercation, which ended when Son picked up Decedent and took him from the home. Decedent took only a few clothes and medications and went to his Father's home in Polk County.

On March 19th, Spouse filed for an *ex parte* order of protection against Decedent in the Hickory County Circuit Court. According to Spouse, Decedent returned to the Hickory County home the next day and attempted to physically attack Spouse. Officers from the local sheriff's department arrived at the scene and made Decedent leave the home. A hearing

3

was held on Spouse's requested order on March 29th, and the court declined to grant a full order of protection.

Decedent was registered to vote at the Hickory County address. He received mail at the Hickory County address and continued to do so after his death. During a hospital appointment on March 24th or 25th, Decedent requested that the hospital change his mailing address to Father's Polk County address. Decedent received at least one piece of mail from the hospital at this address. Decedent remained at the Polk County home from March 18th until his death on March 31st. Son testified that Decedent never expressed any intention to return to the Hickory County home. The death certificate was issued by Polk County and lists the Polk County home as Decedent's residential address.

The Probate Division denied Spouse's motion to transfer the estate to Hickory County. The trial court made a factual finding that Spouse presented no credible evidence that Decedent intended to return to the Hickory County home after he began residing at Father's home in Polk County. Noting that the death certificate identified Decedent as a resident of Polk County, the court found that Spouse failed to submit any credible evidence sufficient to rebut the death certificate. The court also found that Spouse's testimony about Decedent intending to return was "self-serving and not credible."

On appeal, Spouse contends the Probate Division's finding that Decedent was domiciled in Polk County is not supported by substantial evidence.

Missouri law provides that letters of administration shall be granted "[i]n the county in which the domicile of the deceased is situated[.]" § 473.010.1. *Estate of Summer v. Missouri Dep't of Mental Health*, 424 S.W.3d 506 (Mo. App. 2014), provides the following summary of Missouri law concerning domicile:

4

> "Domicile has been equated with one's intended permanent residence." *State ex rel. Missouri Dept. of Social Services, Div. of Medical Services v. Roper*, 174 S.W.3d 563, 567 (Mo. App. 2005); *see also* § 472.010(10) (defining domicile as "the place in which a person has voluntarily fixed his abode, not for a mere special or temporary purpose, but with a present intention of remaining there permanently or for an indefinite time"); *Matter of Estate of Potashnick*, 841 S.W.2d 714, 720 (Mo. App. 1992) (domicile is a person's "permanent home ... to which, whenever he is absent, he has the intention of returning"). "A person can have but one domicile, which, when once established, continues until he renounces it and takes up another in its stead." *In re Toler's Estate*, 325 S.W.2d 755, 759 (Mo. 1959).

*Est. of Summer*, 424 S.W.3d at 509. A decedent's domicile at the time of death determines the venue for the probate of the decedent's estate. *See* **Roper**, 174 S.W.3d at 567. "In order to effectuate a change of domicile it is necessary that there shall be actual personal presence in the new place and also the present intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode." **Toler's Est.**, 325 S.W.2d at 759. Intent is to be determined by the acts and utterances of the person whose domicile is in question. *Id.* at 760. Thus, a person's domicile is a question of fact. *See* **Golden Rule Ins. Co. v. R.S.**, 368 S.W.3d 327, 338 (Mo. App. 2012).

Considering the evidence in the light most favorable to the trial court's ruling, we conclude that there was substantial evidence to support a finding that Decedent intended to change his domicile to the Polk County home. After Decedent's argument with Spouse, Decedent left the Hickory County home and requested to be taken to the Polk County home, where he stayed every night until his death. Spouse's *ex parte* order of protection would have prohibited Decedent from returning to the Hickory County home. Even after the court declined to grant Spouse a full order of protection and Decedent was legally permitted to return to the Hickory County home, he made no effort to do so. Decedent explicitly requested that the hospital change his mailing address to the Polk County home. Son's testimony, which the Probate Division found credible, indicated that Decedent never

5

expressed any intention to return to the Hickory County home.[2]  The foregoing evidence is sufficient to support a finding that Decedent had "actual personal presence" and an "intention to remain" indefinitely at the Polk County home.  *Toler's Est.*, 325 S.W.2d at 759.  Point 1 is denied.

*Point 2*

Spouse's second point challenges the Probate Division's ruling that denied her request to revoke the letters of administration granted to Son and issue new letters to Spouse. The following additional facts are relevant to this point.

After Decedent's death, Spouse met with an attorney to discuss the administration of Decedent's estate.  Spouse testified that the attorney told her she could wait up to a year to apply for letters of administration.  She stated that she decided to wait because she could not afford the costs associated with the estate's administration.  Spouse continued to live in the Hickory County home after Decedent's death and did not make mortgage payments or pay rent to the estate.  Son testified that Spouse sold or tried to sell some of Decedent's personal property, including fishing equipment and a shed full of motorcycle parts.

Son filed an application for letters of administration for Decedent's estate on May 25, 2023.  He testified that he waited some time after Decedent's death for Spouse to file, but he filed himself once he realized that Spouse was not going to do so.  Son's application named Spouse and her address, and notice that Son had been appointed as personal representative was personally served on Spouse.

---

[2] Spouse emphasizes conversations that she testified she had with Decedent in which he expressed an intention to return to the Hickory County home.  The trial court specifically found this testimony not credible.  Because we must defer to the Probate Division's credibility determinations, we cannot consider this evidence on appeal.  *Est. of Blair*, 317 S.W.3d at 86.

The Probate Division denied Spouse's motion to substitute herself for Son as personal representative of Decedent's estate. The court noted that Spouse elected not to apply for letters of administration and that she showed "a disregard for the proper administration of the estate[.]" The court also found that Son was "qualified to be personal representative" of the estate, and that Spouse was not qualified.

The appointment of a personal representative of a decedent's estate is governed by § 473.110.2, which states in pertinent part:

> Letters of administration shall be granted to the following persons if otherwise qualified:
>
> (1) To the husband or wife;
>
> (2) To one or more of those who are entitled to distribution of the estate, who the court shall believe will best manage and preserve the estate. A conservator of a distributee is not entitled to preference;
>
> (3) If the court believes no one of the persons entitled to administer is a competent and suitable person, or if any such person fails to apply for letters when directed by the court, some other person may be appointed[.]

When there is a delay in applying for letters of administration, however, § 473.020 establishes the following additional procedures:

> If no application for letters testamentary or of administration is filed by a person entitled to such letters pursuant to section 473.110 within twenty days after the death of a decedent, then any interested person may petition the probate division of the circuit court which would be the proper venue for the administration of the estate of such decedent for the issuance of letters testamentary or of administration.

§ 473.020.1. Spouse failed to apply for letters of administration by April 20th, which was twenty days after Decedent's death. Indeed, Spouse never filed an application for letters of administration at all. Son is an "interested person" pursuant to § 473.020.1 because he is an heir of Decedent. *See* § 472.010(15) RSMo Cum. Supp. (2019); § 474.010. Therefore, Son

7

was entitled to apply for letters of administration after 20 days elapsed and no other application was filed.

Spouse argues that the Probate Division did not properly follow the procedural requirements of § 473.020.3, which states:

> Within fifteen days from the date of filing, the petition shall be set for hearing to determine who should be directed to apply for letters testamentary or of administration, and not to determine the validity of any claim. Notice of the hearing shall be served upon all interested persons in the manner and within such time as directed by the court. Upon hearing of the petition, the court shall enter such order or orders as it deems appropriate[.]

*Id*. Spouse is correct that the Probate Division did not strictly adhere to these procedures because the hearing was not set until July 7th, which was 43 days after Son filed his application for letters of administration. Spouse fails to demonstrate that this delay had any prejudicial effect. Spouse was given notice of Son's application shortly after the Probate Division issued letters of administration, so she was fully aware of the proceedings. At the hearing, she was given the opportunity to present evidence and argue that she should be appointed personal representative rather than Son. The Probate Division considered all the evidence that it presumably would have considered at a hearing scheduled earlier, and it ultimately decided in Son's favor. We will find reversible error "only when it materially affects the merits of the action[.]" *Lollar v. Lollar*, 609 S.W.3d 41, 47 (Mo. banc 2020); Rule 84.13(b). Because Spouse has not demonstrated how or why the Probate Division's ruling would have been different if the court strictly followed the procedure outlined in § 473.020.3, this alleged error does not warrant reversal.

Spouse also argues that she should have been appointed personal representative instead of Son because a surviving spouse is given precedence in the granting of letters of administration pursuant to § 473.110.2. This argument fails for two reasons.

First, because Spouse did not file for letters of administration within 20 days of Decedent's death, other interested persons were permitted to apply, and the court could grant letters of administration to any person it found to be entitled. § 473.020.

Second, the statute only mandates that letters of administration be granted to a surviving spouse if that person is "otherwise qualified[.]" § 473.110.2. When the court "believes no one of the persons entitled to administer is a competent and suitable person," it may appoint another representative. § 473.110.2(3). The Probate Division specifically found that Spouse was not "otherwise qualified," and this finding was supported by substantial evidence. Spouse deliberately chose to delay filing an application for letters of administration and testified that she was unable to bear the costs associated with administering the estate. Spouse also sought to sell personal property belonging to Decedent's estate, despite a contrary order from the Probate Division. Therefore, the trial court did not err by declining to appoint Spouse as personal representative in place of Son. Point 2 is denied.

The order denying Spouse's requested relief is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

BECKY J.W. BORTHWICK, J. – CONCUR

9